IN RE INCORPORATION OF INDIAN HILLS, JACKSON COUNTY, NORTH CAROLINA

No. 63

(Filed 15 March 1972)

1. Actions § 12; Statutes § 11— repeal of statute — survival of proceeding

In order to permit a proceeding to survive the repeal of the statute which authorized it, there must be a saving clause in the repealing act or a general saving statute applicable to all cases.

2. Municipal Corporations § 1; Statutes § 2—incorporation of single village — general or special act

In determining whether a statute relating to the incorporation of a single village is a general law which the General Assembly has power to enact, the court will look beyond the form of the act and ascertain whether the statute is in fact generally and usually applicable throughout the State.

3. Municipal Corporations § 1; Statutes § 2— incorporation of Indian Hills — statute reinstating Municipal Board of Control — special legislation

The Municipal Board of Control was abolished by an act which contained no saving clause permitting the Board to complete its unfinished business. A subsequent act purported to reinstate the Board for the sole purpose of allowing it to determine any petition or other matter pending before the Board at the time it was abolished. The only business pending before the Board when it was abolished was an application for incorporation of "Indian Hills." *Held:* The act purporting to reinstate the Municipal Board of Control is unconstitutional, since it is not a general saving clause but was enacted for the purpose of completing a single proceeding. [Former] Art. VIII, Sec. 4 of the N. C. Constitution.

APPEAL by Eastern Band of Cherokee Indians (Indians), interveners, before *Clark, J.,* February 9, 1971 Civil Session,

WAKE Superior Court. This case was docketed and argued at the Fall Term 1971 as No. 62.

This proceeding originated on January 7, 1969, by petition signed by a majority of the landowners and qualified voters of a designated area in Jackson County requesting that the area be incorporated. The described area is one mile long divided lengthwise by U. S. Highway 441. The east and west boundaries are 675 feet from the center of the highway. The northern boundary joins the Cherokee (Qualla) Indian Reservation. Cherokee, the present Indian town, is within one mile of the northern boundary.

On the date the petition was filed the area contained sixty-two inhabitants, forty-two qualified voters, and twenty tracts of land valued at $436,870.00. The petitioners requested that the area be incorporated as "Cherokee Town." The petition was addressed to the Municipal Board of Control (Board) and filed with the Secretary of State.

The Board posted notice and held a hearing as required by Article 17, Chapter 160, Sections 195, 196, 197 and 198 of the General Statutes.

The Eastern Band of Cherokee Indians intervened and filed objections to the proposed incorporation. Among the objections were: (1) The area is within three miles of the Indian Town of Cherokee; (2) the purpose of the proposed incorporation is to exploit and to cash in on the Indian name and syphon off from the Indians the lucrative trade which they have fostered and built with the hundreds of thousands of visitors attracted to the area; (3) the new incorporation would deprive them of their present livelihood; and (4) the proposed incorporation would legalize the sale of and make available to the Indians harmful commodities and drinks which are illegal and forbidden on the Reservation.

The interveners alleged they are qualified to protest the proposed incorporation by reason of the fact that they are an incorporated body created by Chapter 211, Private Laws of 1889, and by Chapter 166, Private Laws of 1895, with power to sue and defend actions in courts and before boards in which their rights are involved. (See *U.S. v. Wright,* 53 F. 2d 300, Certiorari denied 285 U.S. 539.)

In re Incorporation of Indian Hills

The petitioners by amendment changed the proposed name substituting "Indian Hills" for "Cherokee Town." On March 19, 1969, the Municipal Board of Control, after hearing and findings, ordered the incorporation as prayed for in the petition. The Indians obtained a review in the Superior Court of Jackson County on March 28, 1969. Judge Bryson affirmed the order of incorporation.

The Court of Appeals by decision filed June 24, 1970, 8 N.C. App. 564, 174 S.E. 2d 850, reversed Judge Bryson's order and remanded the cause for further findings of fact calling attention to the failure of the Board and of the Superior Court to make a finding that the proposed area was not within three miles of the "limits of any city, town, or incorporated village."

On February 19, 1971, the Superior Court of Wake County found further facts and affirmed the order incorporating Indian Hills. The interveners brought the case here for final review alleging the order of incorporation was invalid and that Chapter 1225, Session Laws of 1969, under which the Municipal Board of Control and the Superior Court purported to act, was unconstitutional.

*McGuire, Baley & Wood by J. M. Baley, Jr., for petitioner appellants.*

*Maupin, Taylor & Ellis by Charles B. Neely, Jr., for respondent appellees.*

HIGGINS, Justice.

Prior to amendment in 1916, Article VIII of the North Carolina Constitution of 1868 provided: "It shall be the duty of the Legislature to provide for the organization of cities, towns and incorporated villages . . . ." The new Constitution in effect since November 3, 1970, provides in Article VII, Section 1: "The General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities and towns, and other governmental subdivisions . . . ."

"A municipal corporation, city or town, is an agency created by the State to assist in the civil government of a designated territory . . . . Its charter is the legislative description of the power to be exercised . . . .

". . . 'It is a general and undisputed proposition of law that a municipal corporation possesses, and can exercise, the following powers, and no others: First, those granted in express words, second, those necessarily or fairly implied; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.' " *Smith v. Winston-Salem*, 247 N.C. 349, 100 S.E. 2d 835.

By Chapter 136, Public Laws of 1917, Article 17, Section 160-165, the General Assembly created the Municipal Board of Control consisting of the Attorney General as chairman, the Secretary of State as secretary, and the Chairman of the Utilities Commission as the third member. Sections 160-196, 197 and 198 purported to give to the Board, after hearing and findings of fact, power to enter an order incorporating a described territory into a town giving it the name proposed in the petition. Section 160-196 provides that a new corporation shall not be set up "within three miles of the area included in the limits of any city, town or incorporated village . . . ."

The passage of Chapter 136, Public Laws of 1917, appears to have been a departure from the theory that the creation of municipal corporations is exclusively a legislative function. It is worthy of note that prior to the repeal of Article 17, the General Assembly, when occasion arose, ratified and confirmed the creation of municipalities by the Board. For example, Chapter 1032, Section 2, Session Laws of 1953, provided: "The incorporation of municipal corporations by the municipal board of control, under Article 17 of Chapter 160 of the General Statutes of North Carolina, which have occurred prior to the enactment of this subsection are hereby in all respects validated, confirmed and declared to be in all respects municipal corporations . . . ."

In 1969 the General Assembly appears to have returned to the original concept that the creation of municipal corporations is the business of the General Assembly. Chapter 673, Session Laws of 1969, repealed as of the date of its passage Article 17, Chapter 160 of the General Statutes. The act, however, provided that all charters created by the Board prior to the repeal were ratified and confirmed. Hence, up to the date of its pas-

sage all prior acts of incorporation ordered by the Board were made valid and were confirmed. The repealing statute became effective upon its passage which occurred on June 2, 1969. On that day and by that act the Municipal Board of Control ceased to exist. The repealing statute by failing to contain a saving clause permitting it to complete its unfinished business terminated the Board's existence, leaving the Board without power to proceed further on any matter.

However, on July 1, 1969, the General Assembly enacted Chapter 1225 in a belated attempt to insert a saving clause and to reinstate the Municipal Board of Control with power to complete its unfinished business. The only unfinished business on the date of the passage was the application for the charter for Indian Hills. Chapter 1225, Section 2½ provided:

> "Notwithstanding any other provisions of this Act, Article 17 of Chapter 160 of the General Statutes is hereby re-enacted for the sole purpose of conferring upon the Municipal Board of Control the power and authority to hear and make a determination of any petition or other matter filed or pending with the Municipal Board of Control prior to June 2, 1969. Upon the determination of such pending matters, the Municipal Board of Control shall cease to exist."

The Board having been completely abolished, its re-creation by the General Assembly could be only by a general law. "As a general rule the repeal of a statute without any reservation takes away all remedies given by the repealed statute and defeats all actions and proceedings pending under it at the time of its repeal. The rule is especially applicable to the repeal of statutes creating a cause of action, providing a remedy not known to the common law, or conferring jurisdiction where it did not exist before, and abates proceedings . . . pending on appeal . . . ." 82 CJS, Section 439, STATUTES.

"Under the common law, it has been held that, if a statute is unconditonally repealed without a saving clause in favor of pending suits, all pending proceedings thereunder are terminated, and if final relief has not been granted before the repeal goes into effect, it may not afterwards." 50 Am. Jur. § 530, STATUTES. See *Corporation Com. v. R. R.*, 185 N.C. 435, 117 S.E. 563.

[1] In order to permit a proceeding to survive there must be a saving clause in the repealing act or a general saving statute applicable to all cases. The subsequently passed act attempting to reactivate the Municipal Board of Control for the very special and limited purpose of completing an admittedly single proceeding does not and cannot qualify as a general saving clause. 82 C.J.S., Section 439, ACTIONS & OTHER PROCEEDINGS PENDING, and Section 440, SAVING CLAUSES.

At the time Chapter 1225, Session Laws of 1969, was enacted, the State Constitution, Article VIII, Section 4, provided: "It shall be the duty of the Legislature to provide by general laws for the organization of cities, towns, and incorporated villages, and to restrict their power of taxation . . . assessment . . . contracting debts . . . so as to prevent abuses . . . by such municipal corporations." Although the new Constitution approved at the November election 1970, effective July 1, 1971, does not contain the above section, nevertheless, we must test the legality of Chapter 1225 by the constitutional provisions in effect at the date of its passage.

At the time the Court of Appeals reversed the Board's incorporating order, the act creating the Board had been repealed and the Board had been abolished unless saved by Chapter 1225. The interveners challenged the validity of Chapter 1225 upon the ground: (1) That it was a belated and unsuccessful attempt to insert a saving clause in Chapter 673; and (2) that Chapter 1225 was not a general law as required by the Constitution.

In determining whether Chapter 1225 qualified as a general law it is necessary to look at the actual purpose to be accomplished. The actual purpose was to complete the incorporation of Indian Hills which was the Board's only unfinished business when the Board was abolished. Stating the law in general terms did not make it a general law. The chapter's only purpose was to complete a single incorporation.

For purpose of clarification: " . . . (I)ntent must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied." *Milk Commission v. Food Stores,* 270 N.C. 323, 154 S.E. 2d 548.

**[2]** In determining whether a statute relating to the incorporation of a single village is a general law which the General Assembly has power to enact, the court will look beyond the form of the act and ascertain whether the statute in fact is generally and usually applicable throughout the State.

"The courts are not bound by the letter of the law, which has been denominated its 'body,' but may consider its spirit, which has been called its 'soul.'" *Kearney v. Vann,* 154 N.C. 311, 70 S.E. 747.

"Where . . . adherence to the strict letter would lead to injustice, the Court gives a reasonable construction consistent with the general principles of law. The spirit, or reason of the law, prevails over its letter." *State v. Scott,* 182 N.C. 865, 109 S.E. 789.

**[3]** We conclude that Chapter 1225 was unconstitutional and invalid. The judgment entered in the Superior Court of Wake County is

Reversed.