HOMEBUILDERS ASSOCIATION OF CHARLOTTE, INC. v. THE CITY OF
CHARLOTTE

No. 9126SC986

(Filed 16 March 1993)

**Municipal Corporations § 346 (NCI4th)— user fees—mandated
regulatory services—no statutory authorization**

    The trial court erred by granting declaratory judgment
in favor of the City of Charlotte where plaintiff had brought
an action challenging a section of the Charlotte City Code
providing user fees. A municipality has only such powers as
the legislature confers upon it and there is no enabling legisla-
tion that expressly authorizes municipalities to charge these
user fees. Although the City argues that it had the implied
power to charge user fees by virtue of the General Assembly's
enactment of various statutes, the implementation of user fees
goes beyond the permissible bounds of the authority granted
in those statutes and authority for a municipality to charge
user fees of the type involved here cannot be implied as
reasonably necessary or expedient to the regulatory powers
delegated by these statutes. The argument that imposition
of user fees against individuals or groups demanding or creating
the need for the service is a policy question is without merit
in the absence of enabling legislation from the General
Assembly. While the General Assembly may have the power
to authorize municipalities to impose user fees should it choose
to do so in the future, municipalities may not unilaterally im-
pose these fees absent a grant of authority from the General
Assembly.

    **Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 579 et seq.**

    Appeal by plaintiff from declaratory judgment entered 18 July
1991 by Judge Robert D. Lewis in Mecklenburg County Superior
Court. Heard in the Court of Appeals 9 December 1992.

    On 25 May 1990, plaintiff Home Builders Association of
Charlotte, Inc., filed a complaint seeking a declaratory judgment
pursuant to G.S. 1-253 *et seq.* to declare invalid and unenforceable
§ 2-4 of the Code of the City of Charlotte (hereinafter "City").
That section of the Code provides:

**Sec. 2-4. Schedule of user fees for services by city departments.**

There is hereby established a schedule of user fees for services performed by city departments. Fees shall be set by user fee policies established by the city council and shall be computed in accordance with the methodology set forth in the Arthur Young "User Fees Study of August, 1987," a copy of which is available for inspection in the city's budget and evaluation office. This schedule may be revised from time to time by the city manager, or his designee, to reflect additional costs to the city for providing these services.

Whenever any user fee on the schedule referred to above may be found to be in conflict with a fee for the same or a similar service set out elsewhere, the fees in the user fee schedule shall supersede any prior existing fee.

The complete schedule of user fees shall be available for inspection in the office of the city clerk, and a schedule of user fees for each department shall be conspicuously posted in the appropriate department.

(Ord. No. 2553, § 1, 12-12-88)

On 16 April 1991, the parties stipulated to the following:

1. The Association is a non-profit corporation organized pursuant to the laws of the State of North Carolina having a principal office in Charlotte, Mecklenburg County, North Carolina. The Association has standing to bring this cause of action.

2. The City is a municipal corporation organized pursuant to N.C.G.S. § 160A-1 et seq.

3. This Court has jurisdiction over this matter pursuant to N.C.G.S. § 7A-245 and venue is proper pursuant to N.C.G.S. § 1-77.

4. On or about August 22, 1988, the City Council of the City of Charlotte (the "Council") passed a resolution implementing a policy whereby fees would be charged for a number of City services ("User Fees"). . . .

5. The implementation of the User Fees is codified in § 2-4 of the Code of the City of Charlotte (the "Code"). . . .

HOMEBUILDERS ASSN. OF CHARLOTTE v. CITY OF CHARLOTTE

[109 N.C. App. 327 (1993)]

6. User Fees have been imposed and are being collected by the City, on, among others, the following City services:

(a) Commercial Driveway Permit Review

(b) Commercial Drainage Plan Review and Inspection

(c) Commercial Inspection (Building Permit Site Inspection)

(d) Erosion Control Review and Inspection and Issuance of Grading Permit

(e) 100 + 1 Foodplain [sic] Analysis

(f) Rezoning Review

    i. Single-family districts

    ii. Multi-family districts

    iii. All other districts

(g) Right-of-Way Abandonment (Permanent Street Closing)

(h) Right-of-Way Encroachment

(i) Special Use Permit (Minor)

(j) Special Use Permit (Major)

(k) Storm Drainage Problem Study

(l) Subdivision Reviews

    i. Preliminary Review: Single family (No Streets)

    ii. Preliminary Review and Inspection: Single Family (With Streets)

    iii. Preliminary Review and Inspection: (Non-residential)

    iv. Planned Multi-Family Review and Inspection

    v. Final Plat Review

    vi. Final Plan Revisions

    vii. Final Condominium Plat Review

(m) Tree Ordinance Review

(n) UMUD Review

7. A right-of-way lease is rent charged for the use of the City's right-of-way and is not a "User Fee" as contemplated by § 2-4 of the Code of the City of Charlotte and is, therefore, not before this Court for review.

8. The City has express authority pursuant to N.C.G.S. § 160A-371 and 381 to regulate the zoning and subdivision of land.

9. The City has express authority pursuant to N.C.G.S. § 160A-296 and 299 to regulate its streets and alleys.

10. The City has express authority pursuant to N.C.G.S. § 160A-458 to enact and enforce erosion and sedimentation control ordinances as authorized by Article 4 Chapter 113A of the General Statutes.

11. The City has express authority pursuant to Chapter 115 of the 1975 Session Laws to enact and enforce ordinances regulating removal, replacement, and preservation of trees.

12. The issue before the Court is whether the City had legislative authority to enact § 2-4 of the Code of the City of Charlotte.

13. The Court may grant either party summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure.

A hearing was held on 18 April 1991 and 16 May 1991. On 18 July 1991, a declaratory judgment was entered. The declaratory judgment provided the following:

CONCLUSIONS OF LAW

1. The parties are properly before the Court and there is a justiciable controversy between them.

2. The Court has jurisdiction of this matter under the Declaratory Judgment Act, N.C.G.S. § 1-253 et seq.

3. Section 2-4 of the Code of the City of Charlotte was duly and validly adopted on December 12, 1988, by the Council of the City of Charlotte.

4. The services provided by the City are regulatory measures designed to protect public health, safety, and welfare

and the imposition of fees to defray the cost of regulating is incidental to the primary purpose of guarding the public.

5. The fees charged for regulatory services pursuant to the ordinance are reasonably related to the cost of providing the services.

6. The Council of the City of Charlotte, in adopting the ordinance, did not act arbitrarily or capriciously, but its action was in good faith, reasonable, and a valid exercise of the police power granted to the City by the General Assembly.

NOW, THEREFORE, based upon the foregoing Findings of Fact and Conclusions of Law, IT IS ORDERED, ADJUDGED AND DECREED as follows:

1. Section 2-4 of the Code of the City of Charlotte, effective December 12, 1988, was adopted in accordance with law and is valid;

2. The user fees which have been and continue to be charged and collected in order to defray the cost of regulatory services are legal; .

3. The Plaintiff is not entitled to injunctive relief or any other relief prayed for in the complaint.

4. The costs of this action shall be taxed against the plaintiff.

Plaintiff appeals.

*Murchison, Guthrie, Davis & Henderson, by Alton G. Murchison, III, for plaintiff-appellant.*

*Assistant City Attorney Cynthia Cline Reid, for defendant-appellee.*

EAGLES, Judge.

Plaintiff argues that the trial court erred by granting declaratory judgment in favor of the City of Charlotte. We agree and reverse.

I.

Initially, we note that both parties stipulated that the trial court had jurisdiction over this matter. A municipality may have its rights and obligations determined in a declaratory judgment

action. *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E.2d 749 (1953).

## II.

Plaintiff argues that the trial court erred "because the City did not have the authority to impose 'user fees' for mandated regulatory services." We agree.

"A municipality has only such powers as the legislature confers upon it." *Koontz v. City of Winston-Salem,* 280 N.C. 513, 520, 186 S.E.2d 897, 902 (1972) (citing *Moody v. Transylvania County,* 271 N.C. 384, 156 S.E.2d 716 (1967); *Shaw v. Asheville,* 269 N.C. 90, 152 S.E.2d 139 (1967)). Our Supreme Court has stated:

> The legislature has specifically provided that the powers granted to municipalities in chapter 160A "shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect." N.C.G.S. § 160A-4 (1987). *See Grace Baptist Church v. City of Oxford,* 320 N.C. 439, 443, 358 S.E.2d 372, 374 (1987); *Smith v. Keator,* 285 N.C. 530, 534, 206 S.E.2d 203, 205-06, *appeal dismissed,* 419 U.S. 1043, 42 L. Ed. 2d 636 (1974); *Town of West Jefferson v. Edwards,* 74 N.C. App. 377, 385, 329 S.E.2d 407, 412-13 (1985); *City of Durham v. Herndon,* 61 N.C. App. 275, 278, 300 S.E.2d 460, 462 (1983). Thus, the subject of inquiry is the scope of the enabling legislation on which [the City] relies in enacting its ordinance.

*River Birch Associates v. City of Raleigh,* 326 N.C. 100, 107-08, 388 S.E.2d 538, 542 (1990). Hence, our inquiry commences with an examination of the enabling legislation upon which the City of Charlotte relies in its attempt to enforce § 2-4 of its Code.

In its brief, the City concedes that "no statute expressly provides that cities and towns are authorized to charge the cost of a regulatory service to those who use that service." Simply stated, there is no enabling legislation that expressly authorizes municipalities to charge the user fees that are contained in § 2-4 of the Code of the City of Charlotte. Nevertheless, the City argues that "the authority for such ordinances and, in particular, for Section 2-4 of the Code of the City of Charlotte can be fairly and necessarily implied from the regulatory powers expressly granted in the statutes. The ordinance adopted by the City Council is a

permissible means through which the City can carry out its duties to regulate the development of land within city limits." We disagree.

The City of Charlotte contends that it has the implied power to impose the user fees found in § 2-4 of its Code by virtue of its general police powers. However, "[a] city or town in this State has no inherent police power. It may exercise only such powers as are expressly conferred upon it by the General Assembly or as are necessarily implied from those expressly so conferred." *Town of Conover v. Jolly*, 277 N.C. 439, 443, 177 S.E.2d 879, 881 (1970) (citations omitted). Statutory delegations of power to municipalities are to be strictly construed, resolving any ambiguity against the municipal corporation's authority to exercise the power in question. *Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 554, 276 S.E.2d 443, 445 (1981); *In re Incorporation of Indian Hills*, 280 N.C. 659, 662, 186 S.E.2d 909, 910 (1972) ("Any fair, reasonable doubt concerning the existence of [a municipal corporation's] power is resolved by the courts against the corporation, and the power is denied.").

In support of its contention, the City argues that G.S. 160A-175(a) grants to local governments the authority to "impose fines and penalties for violations of its ordinances." However, we conclude that the implementation of user fees goes beyond the permissible bounds of the authority granted in G.S. 160A-175(a). This statute clearly reflects the desire of the General Assembly to grant to municipalities a mechanism, the power to impose fines and penalties, to enforce its ordinances by penalizing those who violate them. G.S. 160A-175(a) does not apply here. The City itself argues that "[a] reasonable means of providing a regulatory program is to require the person being regulated to meet some of the costs occasioned by his actions." Here, the City is attempting to impose a fee for the mere use of its services, most of which are required and are provided exclusively by the City. The City is not attempting to impose user fees to enforce an ordinance because the ordinance has been violated. The user fees proposed would be assessed against every user of services without regard for whether any ordinance had been violated. Accordingly, we conclude that the General Assembly did not authorize the City of Charlotte to impose user fees by its enactment of G.S. 160A-175(a).

The City further argues that

North Carolina municipalities have express authority to regulate matters which concern the development of land and use of streets within their corporate limits. N.C. Gen. Stat. §§ 160A-296 ["Establishment and control of streets; center and edge lines"], -299 ["Procedure for permanently closing streets and alleys"], -371 ["Subdivision regulation"], -381 ["Grant of power" for zoning], -458 ["Erosion and sedimentation control"] . . . . The primary purpose of the statutes (N.C. Gen. Stat. §§ 160A-296, -299, -371, -381, -458) is to provide for regulation of urban development and to control use of city streets.

The City argues that it has the implied power to charge user fees by virtue of the General Assembly's enactment of G.S. 160A-296, G.S. 160A-299, G.S. 160A-371, G.S. 160A-381, and G.S. 160A-458. We disagree.

Even under the broad construction mandated by G.S. 160A-4, we conclude that authority for a municipality to charge user fees of this type cannot be implied as "reasonably necessary or expedient" to the regulatory powers delegated by these statutes. We note that the City contends that the fees are designed to help meet the costs of the regulation of development. G.S. 160A-209(c) provides that:

> (c) Each city may levy property taxes for one or more of the following purposes subject to the *rate limitation* set out in subsection (d).

> (25) Planning—To provide for a program of planning and *regulation of development* in accordance with Article 19 of this Chapter.

(Emphasis added.) *See e.g.,* G.S. 160A-209(c)(30) (streets); G.S. 160A-209(c)(10c) (drainage); G.S. 160A-209(c)(31a) (urban redevelopment). G.S. 160A-363 (entitled "Supplemental powers") of Article 19 (entitled "Planning and Regulation of Development") of Chapter 160A provides "Any city council is authorized to make any appropriations that may be necessary to carry out any activities or contracts authorized by this Article . . . and *to levy taxes for these purposes as a necessary expense.*" (Emphasis added.) To meet the costs of regulating development, the General Assembly has expressly authorized cities the power to "levy taxes"; a power which is, in turn, pursuant to G.S. 160A-209(c) subject to the "rate limitations" set forth in G.S. 160A-209(d). Conversely, G.S. 160A-363

does not grant cities any authority to impose the user fees in issue here. To allow the City unilaterally to impose its own user fees subject to no limitations would clearly circumvent the intent of the General Assembly.

Given that the City's own policy "is to charge and impose regulatory fees for certain services which directly benefit the individual or group who demand or create the need for the service," the City argues that "[t]he issue of whether developer-related regulatory services should be subsidized by all citizens through property taxes or by the persons who necessitate the regulation is a policy question." We find that this argument is without merit in the absence of enabling legislation for user fees from the General Assembly.

Finally, we conclude that the City's contentions regarding its right to impose user fees draw no support from the perspective of legislative history. We note, for example, that the General Assembly has expressly authorized sewer districts to charge "user fees" for furnished services. G.S. 162A-88; *see McNeill v. Harnett County*, 327 N.C. 552, 569, 398 S.E.2d 475, 485 (1990). *See also* G.S. 159G-6(b)(2); G.S. 159G-18(a). Yet the General Assembly has not enacted a comparable statute expressly authorizing the type of user fees proposed by the City which encompass virtually any regulatory stage in the development process. While the General Assembly may have the power to authorize municipalities to impose user fees should it choose to do so in the future, we conclude that municipalities may not unilaterally impose these fees absent a grant of authority from the General Assembly. Currently, there is no legislative authority for municipalities to impose user fees as proposed by the ordinance in issue here.

### III.

Plaintiff argues that the trial court erred by granting a declaratory judgment for the City of Charlotte "in that the 'user fees' imposed are an unreasonable exaction and are therefore unenforceable." Given our holding that these user fees are invalid absent enabling legislation from the General Assembly, we need not address this issue.

### IV.

In sum, if user fees are to be permitted in North Carolina, the authority for municipalities to impose these fees must be

granted by our General Assembly. There being no such author-
ity here, user fees shall not be collected under the authority of
§ 2-4 of the Code of the City of Charlotte from and after the
certification date of this opinion. Accordingly, the trial court's
declaratory judgment in favor of the City of Charlotte is reversed
and the cause is remanded for entry of declaratory judgment in
favor of plaintiff.

Reversed and remanded.

Judges WELLS and LEWIS concur.