HOMEBUILDERS ASSOCIATION OF CHARLOTTE, INC. v. THE CITY OF CHARLOTTE

No. 133PA93

(Filed 8 April 1994)

1. **Municipal Corporations § 148 (NCI4th)— grants of power to municipalities—statutory rule of construction**

   The proper rule of construction of grants of powers to municipalities is the broad rule set forth in N.C.G.S. § 160A-4. Therefore, such grants of power should be construed to include any additional or supplementary powers that are reasonably necessary or expedient to carry them into execution or effect.

   **Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 193 et seq.**

2. **Municipal Corporations § 346 (NCI4th)— regulatory user fees— authority of city to charge**

   The City of Charlotte had the authority to charge reasonable user fees to cover the costs of regulatory services provided by the City since the fees were reasonably necessary or expedient to the execution of the City's express power to regulate the land development activities for which the services are provided. Furthermore, the fees imposed by the City of Charlotte are reasonable where the trial court found that they are based on data from the preceding year and are

reasonably related to the expenses involved in providing the services for which the fees are charged.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 579 et seq.**

Justice MITCHELL dissenting.

Justice WEBB joins in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 from a decision of the Court of Appeals, 109 N.C. App. 327, 427 S.E.2d 160 (1993), reversing judgment entered 18 July 1991 by Lewis, J., in Superior Court, Mecklenburg County. Heard in the Supreme Court 15 October 1993.

*Murchison & Paulson, by Alton G. Murchison, III, David F. Paulson, Jr., and C. Phillip Wells, for plaintiff-appellant and -appellee.*

*Office of the City Attorney, by Henry U. Underhill, Jr., City Attorney, and Cynthia Cline Reid, Assistant City Attorney, for defendant-appellant and -appellee City of Charlotte.*

*J. Michael Carpenter, for North Carolina Homebuilders Association, amicus curiae.*

*S. Ellis Hankins, and Robert E. Hagemann, for North Carolina League of Municipalities, amicus curiae.*

FRYE, Justice.

In this appeal The City of Charlotte [hereinafter the City] contends that the Court of Appeals erred in reversing the trial court's order of declaratory judgment in its favor and remanding for entry of declaratory judgment in favor of Plaintiff, Homebuilders Association of Charlotte, Inc. [hereinafter the Association]. The Court of Appeals held that the City had no authority to impose "user fees" absent enabling legislation from the General Assembly. "There being no such authority here, user fees shall not be collected under the authority of § 2-4 of the Code of the City of Charlotte from and after the certification date of this opinion." *Homebuilders Ass'n of Charlotte, Inc. v. City of Charlotte*, 109 N.C. App. 327, 336, 427 S.E.2d 160, 165 (1993). The Association agrees with the Court of Appeals' decision and argues that it should be applied

retroactively. We conclude that the trial court correctly held that the City had authority to impose the fees in question and that the Court of Appeals erred in reversing that decision. Accordingly, we need not reach the question of retroactivity.

In February of 1986, a fifteen-member Joint City-County Citizens' Revenue Committee was appointed by the Mayor of the City and the Chairperson of the Mecklenburg County Commission. The Committee requested that the City and Mecklenburg County consider the implementation of user fees for a variety of governmental regulatory services and for the use of public facilities. In response to this request, the City and County hired Arthur Young and Company, an accounting and management consulting firm, to conduct a comprehensive study to determine the cost of certain regulatory services provided by the City and County and to recommend fees for those services where appropriate. On 22 August 1988, the City Council passed a resolution implementing a policy whereby user fees would be charged for a number of city regulatory services and rental of publicly owned facilities. The fee schedule was codified in Section 2-4 of the Code of the City of Charlotte which provides:

> There is hereby established a schedule of user fees for services performed by city departments. Fees shall be set by user fee policies established by the city council and shall be computed in accordance with the methodology set forth in the Arthur Young "User Fees Study of August, 1987," a copy of which is available for inspection in the city's budget and evaluation office. This schedule may be revised from time to time by the city manager, or his designee, to reflect additional costs to the city for providing these services.

> Whenever any user fee on the schedule referred to above may be found to be in conflict with a fee for the same or a similar service set out elsewhere, the fees in the user fee schedule shall supersede any prior existing fee.

> The complete schedule of user fees shall be available for inspection in the office of the city clerk, and a schedule of user fees for each department shall be conspicuously posted in the appropriate department. (Ord. No. 2553, §1. 12-12-88).

On 25 May 1990, the Association filed a complaint seeking declaratory relief pursuant to N.C.G.S. § 1-253 et seq. to declare

invalid and unenforceable Section 2-4 of the Code of the City. The Association also sought to permanently enjoin the City from collection of the fees until and unless the North Carolina General Assembly expressly granted such power to the City. Both parties moved for summary judgment and a hearing was held before Judge Robert D. Lewis at the 18 April and 16 May 1991 Civil Sessions of Superior Court, Mecklenburg County. A declaratory judgment order in favor of the City was entered on 18 July 1991 from which the Association appealed. The Court of Appeals reversed the trial court's declaratory judgment order and remanded the cause for entry of declaratory judgment in favor of the Association. On 3 June 1993, we allowed both parties' petitions for discretionary review.

For purposes of this appeal, the parties stipulated the following:

6. User Fees have been imposed and are being collected by the City, on, among others, the following City services:

(a) Commercial Driveway Permit Review

(b) Commercial Drainage Plan Review and Inspection

(c) Commercial Inspection (Building Permit Site Inspection)

(d) Erosion Control Review and Inspection and Issuance of Grading Permit

(e) 100 + 1 Floodplain [sic] Analysis

(f) Rezoning Review

   i. Single-family districts

   ii. Multi-family districts

   iii. All other districts

(g) Right-of-Way Abandonment
(Permanent Street Closing)
(h) Right-of-Way Encroachment

(i) Special Use Permit (Minor)

(j) Special Use Permit (Major)

(k) Storm Drainage Problem Study

(l) Subdivision Reviews

    i. Preliminary Review:
       Single family (No Streets)

    ii. Preliminary Review and Inspection:
       Single Family (With Streets)

    iii. Preliminary Review and Inspection:
       (Non-residential)

    iv. Planned Multi-Family Review and Inspection

    v. Final Plat Review

    vi. Final Plan Revisions

    vii. Final Condominium Plat Review

(m) Tree Ordinance Review

(n) UMUD Review

The amount of user fees assessed varies depending upon the type of service provided. For example, the fee schedule with an effective date of 1 July 1990 provides that the cost for commercial drainage plan review and inspection is a flat fee of $80 while a sliding fee based on acreage is charged for services such as grading permits.

The parties have also stipulated that the City has the following express authority:

8. The City has express authority pursuant to N.C.G.S. §160A-371 and 381 to regulate the zoning and subdivision of land.

9. The City has express authority pursuant to N.C.G.S. §160A-296 and 299 to regulate its streets and alleys.

10. The City has express authority pursuant to N.C.G.S. §160A-458 to enact and enforce erosion and sedimentation control ordinances as authorized by Article 4 Chapter 113A of the General Statutes.

11. The City has express authority pursuant to Chapter 115 of the 1975 Session Laws to enact and enforce ordinances regulating removal, replacement, and preservation of trees.

The law is well-settled that "a municipality has only such powers as the legislature confers upon it." *Koontz v. City of Winston-*

*Salem*, 280 N.C. 513, 520, 186 S.E.2d 897, 902 (1972). In the instant case, the extent of municipal powers granted to the City is at issue; thus, a brief history of the construction of legislative grants of authority to municipalities is in order.

A long-standing rule of construction, generally known as "Dillon's Rule," was applied as early as the mid-1870's by North Carolina courts. *See, e.g., Smith v. New Bern*, 70 N.C. 14 (1874); *Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 276 S.E.2d 443 (1981), *appeal after remand*, 61 N.C. App. 682, 301 S.E.2d 530, *rev. denied*, 308 N.C. 675, 304 S.E.2d 757 (1983). Judge John F. Dillon stated the rule in his treatise on municipal corporations as follows:

> [A] *municipal corporation possesses and can exercise the following powers and no others*: First, those granted in *express words*; second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation, — not simply convenient, but indispensable.

Dillon, *Commentaries on the Law of Municipal Corporations*, § 237 (5th ed. 1911).

The generally accepted rule today seems to be that the municipal power to regulate an activity implies the power to impose a fee in an amount sufficient to cover the cost of regulation. Lawrence, *Local Government Finance in North Carolina*, § 311, at 67 (2d ed. 1990); Eugene McQuillen, *The Law of Municipal Corporations*, § 26.27 (3d ed. 1986 rev. ed.); *see also Oak Park Trust & Savings v. Mount Prospect*, 127 Ill. App. 3d 10, 536 N.E.2d 763, *appeal denied*, 127 Ill. 2d 621, 545 N.E.2d 115 (1989); *Counter v. City of Rawlins*, 662 P.2d 888 (Wyo. 1983).

In 1971, the North Carolina General Assembly enacted a comprehensive rewrite of the municipal statutes, codified as North Carolina General Statutes Chapter 160A, effective 1 January 1972. 1971 N.C. Sess. Laws ch. 698. Article 8 of this Chapter is entitled "Delegation and Exercise of the General Police Power." Section 160A-174 of Article 8 sets out the general ordinance-making power of municipalities as follows:

> (a) a city may by ordinance define, prohibit, regulate, or abate acts, omissions, or conditions, detrimental to the health,

safety, or welfare of its citizens and the peace and dignity of the city, and may define and abate nuisances.

N.C.G.S. § 160A-174(a) (1987).

In section 160A-175, municipalities are given specific powers to enforce their ordinances and section 160A-177 provides that the enumeration of "specific powers to regulate, restrict or prohibit acts, omissions, and conditions shall not be deemed to be exclusive or a limiting factor upon the general authority to adopt ordinances conferred on cities by G.S. 160A-174." N.C.G.S. § 160A-177 (1987). Other provisions of Chapter 160A grant municipalities specific authority to regulate the subdividing and zoning of land (N.C.G.S. §§ 160A-371 to -381); use (including closure) of public streets, sidewalks, and alleys (N.C.G.S. §§ 160A-296 to -299); and by subsequent enactments, the authority to enact and enforce certain erosion and sedimentation control ordinances (N.C.G.S. § 160A-458). Additionally, the City of Charlotte was authorized to adopt ordinances regulating removal, replacement and preservation of trees by Chapter 115 of the 1975 Session Laws. Thus, in this case, the services for which user fees are charged are all related to some express authority of the City to regulate the development of land.

As part of the enactment of Chapter 160A, the General Assembly provided the following rule for construing legislative grants of power under this chapter and city charters:

> *Broad Construction.* It is the policy of the General Assembly that the cities of this State should have adequate authority to execute the powers, duties, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter and of city charters shall be *broadly construed* and grants of power shall be construed to include *any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect*; Provided, that the exercise of such additional or supplementary powers shall not be contrary to State or federal law or to the public policy of this State.

N.C.G.S. § 160A-4 (1987) (emphasis added).

[1] This statute makes it clear that the provisions of chapter 160A and of city charters shall be broadly construed and that grants of power shall be construed to include any additional and

supplementary powers that are reasonably necessary or expedient to carry them into execution and effect. We treat this language as a "legislative mandate that we are to construe in a broad fashion the provisions and grants of power contained in Chapter 160A." *River Birch Assoc. v. City of Raleigh*, 326 N.C. 100, 109, 388 S.E.2d 538, 543 (1990); *see also Grace Baptist Church v. City of Oxford*, 320 N.C. 439, 443, 358 S.E.2d 372, 374 (1987); *Smith v. Keator*, 285 N.C. 530, 534, 206 S.E.2d 203, 205-06, *appeal dismissed*, 419 U.S. 1043, 42 L. Ed. 2d 636 (1974); *Town of West Jefferson v. Edwards*, 74 N.C. App. 377, 385, 329 S.E.2d 407, 412-13 (1985); *City of Durham v. Herndon*, 61 N.C. App. 275, 278, 300 S.E.2d 460, 462 (1983). In contrast to N.C.G.S. § 160A-4, Dillon's Rule suggests a narrow construction, allowing a municipal corporation only those powers "granted in *express words*, . . . *necessarily or fairly implied* in or *incident* to the powers expressly granted, . . . and those *essential* to the accomplishment of the declared objects and purposes of the corporation." Dillon, *Commentaries on the Law of Municipal Corporations*, § 237 (5th ed. 1911). The City contends that the imposition of user fees should be upheld even under application of Dillon's Rule. We find it unnecessary to decide that question since we conclude that the proper rule of construction is the one set forth in the statute.

In its brief, the Association contends that this Court has applied a narrow rule of construction in analyzing a municipality's powers even after the enactment of N.C.G.S. § 160A-4 in 1971. In *Porsh Builders*, 302 N.C. 550, 276 S.E.2d 443, this Court addressed the question of whether a city, under N.C.G.S. § 160A-514(d), had discretion to consider whether a potential buyer's bid for real estate best complied with the redevelopment plan in determining if he was the "highest responsible bidder." Relying on traditional Dillon analysis, a majority of the Court held that the city did not have the authority in question. In *Greene v. City of Winston-Salem*, 287 N.C. 66, 213 S.E.2d 231 (1975), the Court faced the question of whether a city ordinance requiring sprinkler systems in high-rise buildings was a building regulation ordinance subject to the approval of the State Building Code Council or a fire protection ordinance emanating from the police power of the City and therefore not requiring such approval. Although the Court quoted Dillon's Rule of construction in the opinion, the basis of its decision that the city did not have the authority to enact the ordinance was that the General Assembly had provided a complete and integrated regulatory scheme to the exclusion of local regulation.

In neither case was N.C.G.S. § 160A-4 discussed or cited by the Court and the issue of the interplay between Dillon's Rule of construction and N.C.G.S. § 160A-4 was, therefore, not addressed. Thus, we do not consider *Porsh* and *Greene* as determinative on the issue squarely presented in the instant case: the proper rule of construction of grants of powers to municipalities in light of N.C.G.S. § 160A-4.

[2] Here, the Association challenges the City's authority to charge user fees to cover the costs of regulatory services provided by the City. The City argues *inter alia* that applying the broad rule of construction of N.C.G.S. § 160A-4, it possesses the authority to charge regulatory user fees as an additional and supplementary power that is reasonably necessary or expedient to carry a regulatory program into execution and effect. We agree with the City and hold that the establishment of the user fee schedule codified in Section 2-4 of the Code of the City was reasonably necessary or expedient to the execution of the City's power to regulate the activities for which the services are provided.

As support for the position that the City did not have the authority to charge these fees, the Association argues, and the Court of Appeals based its decision—in part—on the fact that the General Assembly has expressly provided a means by which to meet the costs of regulating development, *i.e.*, levying of taxes. N.C.G.S. § 160A-209(c) (1993). There is, however, no language in the statute which restricts the municipalities to this method and the imposition of these fees does not appear to be contrary to State or federal law or the public policy of this State. The City has chosen a reasonable alternative by requiring that those who desire a particular service bear some of the costs associated with the provision of that service.

Similarly, the Court of Appeals noted that the General Assembly has expressly authorized county water and sewer districts to charge user fees for furnished services while it has remained silent on the authority to impose user fees for other services. *See* N.C.G.S. § 162A-88 (1987); *McNeil v. Harnett County*, 327 N.C. 552, 398 S.E.2d 475 (1990). Here again, the General Assembly did not specify that sewer services were the only services for which user fees could be charged and we find no basis for such a strained reading of this statute. To the contrary, we consider the enumeration in N.C.G.S. § 162A-88 of specific powers of a county water and sewer

district to "establish, revise and collect rates, fees or other charges and penalties for the use of or the services furnished or to be furnished by any . . . sanitary sewer and water system of the district" as a recognition by the General Assembly that such powers are reasonably necessary or expedient to the district's execution of its duties. In fact, the very purpose of § 162A-88, entitled "District is a Municipal Corporation," is to clarify that a county water and sewer district created pursuant to § 162A-86 is effectively a municipal corporation. N.C.G.S. § 162A-88 (1991).

Even though we conclude that the City does have the authority to assess user fees to defray the costs of regulation, such fees will not be upheld if they are unreasonable. See State v. Moore, 113 N.C. 698, 18 S.E. 342 (1893), rev'd on other grounds, 129 N.C. 686, 40 S.E.2d 216 (1901); State v. Bean, 91 N.C. 499 (1884). See generally McQuillen, The Law of Municipal Corporations, § 26.27 (3d ed. 1986 rev. ed.); Lawrence, Local Government Finance in North Carolina, § 311, at 68 (2d ed. 1990) ("Because the purpose of such a fee or charge is to place the cost of regulation on those being regulated, a rough limit to 'reasonableness' is the amount necessary to meet the full cost of the particular regulatory program.").

The Association contends that the fees as imposed are unreasonable. We reject this contention on the basis of the trial court's findings of fact as follows:

14. Although the services are regulatory measures designed to protect the public, the primary beneficiaries of the services provided by the City are the consumers of the service, including members of the Association.

15. The City's recovery of some of the cost of providing the services from those individuals or groups who both necessitate the regulations and benefit from the services, is a reasonable method of financing the services and providing an effective level of regulation.

16. As set forth in the ordinance, the City determines the cost of providing a service based upon the methodology established by Arthur Young and Company in its comprehensive "User Fee Study" dated August 26, 1987.

17. The methodology recommended by Arthur Young and Company involves four steps, namely, identification and evaluation of services for which user fees could be charged; determination

of the cost of providing the services; allocation of costs to specific service areas and determinations of the cost of a service per occurrence. The fourth step, determination of cost per occurrence, requires annual review and adjustment of user fees and the City has followed the recommended methodology by reviewing the demand for services and making adjustments in staffing as necessary.

18. The user fees charged by the City for its services are inherently conservative because they are calculated to recover reasonably anticipated costs based on data from the preceding year and, therefore, actual increases in salaries, equipment costs, benefits, etc., are not calculated in the "cost per service."

19. The City has attempted to take into account social and economic fluctuations which may occur in a given year by its policy decision to recover only the direct costs of providing services and by limiting those costs to 80%.

20. The amount of the user fees is reasonably related to the expenses involved in providing the services for which the fees are charged.

21. The user fees are for the sole purpose of defraying the cost of regulation and do not restrict the development of land nor do they significantly impact the Association or its members' ability to develop property.

A trial court's findings of fact are binding on appeal when supported by competent evidence. *See In re Estate of Trodgon*, 330 N.C. 143, 409 S.E.2d 897 (1991). The trial court's findings of fact are adequately supported by competent evidence in the form of essentially uncontradicted affidavits by a partner of Arthur Young and Company, as well as several City employees, including an internal consultant, a civil engineer, and a strategic planning and research manager. The Association does not contend that the fees exceed the actual cost of regulation but insists that any amount above the minimal cost of a license or permit should be borne by the community at large. The Association cites no authority for this proposition. We believe that this argument is better addressed to the elected members of the City Council. We, therefore, conclude that the fees as imposed are not unreasonable.

For the reasons stated herein, we reverse the decision of the Court of Appeals and remand to that court for further remand

to the Superior Court, Mecklenburg County, for reinstatement of the judgment of the Superior Court.

REVERSED AND REMANDED.

Justice MITCHELL dissenting.

For reasons thoroughly explained in the thoughtful opinion of the Court of Appeals in this case, I would hold that the City of Charlotte is without authority to impose user fees. Further, I do not believe that the fees at issue here are "user fees." I had always understood that matters such as review of plans for subdivisions and condominiums, storm drainage problem studies, tree ordinance reviews, erosion control reviews, and similar activities were for the benefit of and equally "used" by the entire public. Further, I had thought that to single out any small segment of the public to pay the full costs of such activities was to risk violating constitutional prohibitions on taking the property of such individuals without due process of law. Apparently the General Assembly of North Carolina shares such concerns since it has expressly provided that cities may pay for the "regulation of development" within their boundaries *by levying general property taxes on all citizens.* N.C.G.S. § 160A-209(c)(25) (1987); *see also* N.C.G.S. § 160A-209(c)(30) (streets), (34) (watershed improvements, *e.g.,* drainage). As the activities to be paid for in this case are activities benefiting all citizens of the city equally, fees to pay for them are not "user fees" in any proper sense of that term. That being the case, I believe that the intent of the legislature in passing statutes such as N.C.G.S. § 160A-209 and others was to require that cities levy general taxes to pay for such services. If this were not the case, the legislature would have expressly authorized such fees, just as it did with regard to services furnished by sewer districts. N.C.G.S. § 162A-88 (1991).

For the foregoing reasons, I believe that the General Assembly of North Carolina intended that cities not have the authority to impose fees such as those at issue here upon small groups of the public that the cities have arbitrarily deemed to be "users." Accordingly, I respectfully dissent from the decision of the majority.

Justice Webb joins in this dissenting opinion.