**BALD HEAD ISLAND, LTD. v. VILLAGE OF BALD HEAD ISLAND**

[175 N.C. App. 543 (2006)]

BALD HEAD ISLAND, LTD., THE CUTTING EDGE MAINTENANCE, INC., PROJECT WORKS, INC., SOUTHPORT ELECTRICAL SERVICE, INC., THE CAROLINA COMPANIES, INC., RICHARD HEWETT ELECTRIC, INC., COASTAL CAROLINA LANDSCAPE, INC., AND IVAN DIAZ, Plaintiffs v. VILLAGE OF BALD HEAD ISLAND, Defendant

No. COA04-1209

(Filed 17 January 2006)

## 1. Appeal and Error— appellate rules violations—notice of errata submitted prior to oral argument

Although plaintiffs violated the Rules of Appellate Procedure by failing to reference their assignments of error in their brief as required by N.C. R. App. P. 28(b)(6), the Court of Appeals exercised is discretion under N.C. R. App. P. 2 to hear the appeal despite the violations because plaintiffs submitted a notice of errata prior to oral argument which amended the headings in their brief to comply with Rule 28(b)(6).

## 2. Highways and Streets— permit fee—use of internal combustion engine vehicles on island roads

The trial court did not err in an action challenging the legality of defendant Village of Bald Head Island's permit fee schedule for the use of internal combustion engine (ICE) vehicles on the island by granting summary judgment in favor of defendant, because: (1) the legislature gave the Village the express power to impose fees, and thus, it is unnecessary to address whether the fees charged by the Village are more aptly considered a fee or a tax but instead it must be determined whether the Village exceeded the authority the legislature granted; (2) although plaintiff contractors object to the amount of fees collected and the ultimate use of the revenue, the General Assembly did not place a limit on the fees but stated that the amount may be based on criteria that bear upon the Village's costs associated with the operation of vehicles on its roads and that such criteria may include gross weight, length, number of axles, and motor or engine characteristics; (3) although plaintiffs contend the ICE fees assessed by the Village violate N.C.G.S. § 20-97 which limits municipal taxes on vehicles to $5.00 per year, the General Assembly has explicitly authorized the Village to exempt itself from Article 2 of Chapter 20, which includes N.C.G.S. § 20-97; (4) although plaintiff contends the ICE ordinance violates both the North Carolina and United States Constitutions, plaintiffs fail to specify which

provisions of the constitutions the ordinance allegedly violates; (5) to the extent plaintiffs may have been presenting a commerce clause argument, the Court of Appeals lacked jurisdiction to review such an argument since plaintiffs' commerce clause claim was dismissed pursuant to N.C.G.S. § 1A-1, Rule 12(c) and plaintiffs did not appeal from that order nor assign error to the dismissal of this claim; and (6) although plaintiffs assert the ICE ordinance deprives them of due process, the ICE fee classification based on weight and width as well as duration of use is rationally related to the Village's regulation and maintenance of its roads.

Appeal by plaintiffs from order entered 12 April 2004 by Judge Jack W. Jenkins in Brunswick County Superior Court. Heard in the Court of Appeals 20 April 2005.

*Fletcher, Ray & Satterfield, L.L.P., by George L. Fletcher and Kimberly L. Moore, for plaintiff-appellants.*

*Womble, Carlyle, Sandridge & Rice, P.L.L.C., by Douglas W. Hanna, Sean E. Andrussier, and Melody C. Ray-Welborn, for defendant-appellee.*

HUDSON, Judge.

In 2002, plaintiffs filed this lawsuit against the Village of Bald Head Island (the Village), challenging the legality of the Village's permit fee schedule for the use of internal combustion engine (ICE) vehicles on the island. On 12 December 2003, the court dismissed the plaintiffs' commerce clause claim pursuant to the Village's Rule 12(c) motion to dismiss. In April 2004, the court granted summary judgment to the Village on plaintiffs' remaining claims and denied plaintiffs' cross-motion for summary judgment. Plaintiffs appeal. We affirm the trial court.

Bald Head Island is a coastal island community located near Southport, North Carolina. The General Assembly has recognized the

unique nature of Bald Head Island with its combination of structures, land, and vegetation, including the oldest standing lighthouse along the coast of the State and approximately 172 acres of publicly owned prime maritime forest, that exist in a delicate ecological balance requiring careful planning, nurture, and support, as evidenced in the development plan for the island.

S.L. 1997-324. This unique environment requires a unique form of transportation and ordinary travel on the island is by electric-powered golf cart. The narrow roads on Bald Head Island, constructed to blend into the natural environment, were built to accommodate golf carts rather than motor vehicles, and do not comply with Department of Transportation specifications. The Village greatly limits the use of gasoline-powered vehicles—although its emergency vehicles are gas-powered, other gas-powered vehicles, including those used for construction and deliveries, are allowed only by permit.

In recognition of these unique circumstances, the General Assembly empowered the Village, in its Charter, to regulate motor vehicles. S.L. 1997-324. For a number of years, the Village has had an ICE ordinance, whereby it charges fees to those who operate ICE vehicles on Bald Head Island. In February 2000, the Village adopted the current ICE ordinance, which determines permit fees based on the vehicle's gross weight, width, and duration of use. Before 2000, the fees ranged only as high as $200 per year for a construction or delivery truck. Under the new ordinance, a daily permit ranges from $20 to $200, and an annual permit costs from $200 to $2,000. In 2002, plaintiffs, who are contractors subject to the permit fees, filed suit seeking declaratory judgment. Also in 2002, the General Assembly amended the Village Charter, granting the Village the express power to regulate vehicles through the assessment of fees.

[1] Before reaching the merits of plaintiffs' arguments, we must address plaintiffs' violations of the Rules of Appellate Procedure. Rule 28(b)(6) requires that the argument sections in the appellant's brief must make "reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal." N.C. R. App. P. 28(b)(6) (2004). Plaintiffs failed to reference their assignments of error in their brief, although they did submit a "Notice of Errata" prior to oral argument which amended the headings in their brief to comply with Rule 28(b)(6).

It is well-established that rules violations may result in dismissal of an appeal. *See, e.g., Hines v. Arnold,* 103 N.C. App. 31, 37-38, 404 S.E.2d 179, 183 (1991). Recently, in *Viar v. N.C. DOT,* our Supreme Court reiterated the importance of compliance with the Rules of Appellate Procedure and admonished this Court not to use Rule 2 to "create an appeal for an appellant." 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). Rule 2 of the Rules of Appellate Procedure allows this

Court to review an appeal, despite rules violations. N.C. R. App. P. 2 (2005). This Court has previously reviewed at least one appeal pursuant to Rule 2 where the appellant "rectified his errors" in an errata sheet. *Pugh v. Pugh*, 111 N.C. App. 118, 121, 431 S.E.2d 873, 875 (1993). Here, because plaintiffs submitted their notice of errata before oral argument, and because we need not "create an appeal" for appellants, we choose to review the appeal pursuant to our discretion under Rule 2.

**[2]** We review a trial court's grant of summary judgment to determine whether there is a genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 707, 582 S.E.2d 343, 345 (2003), *aff'd*, 358 N.C. 137, 591 S.E.2d 520 (2004), *reh'g denied*, 358 N.C. 381, 597 S.E.2d 129 (2004). Because the facts here are not at issue, we consider only whether the court properly concluded that the Village was entitled to judgment as a matter of law. "Any error made in interpreting a statute is an error of law." *In re Appeal of North Carolina Sav. & Loan League*, 302 N.C. 458, 464, 276 S.E.2d 404, 409 (1981).

In their first argument, plaintiffs essentially argue that the Village exceeded its statutory powers in imposing fees on ICE vehicles. Plaintiffs contend that the Village transformed the fees permitted by statute into an unauthorized form of taxation. We disagree.

Plaintiffs assert that fees are connected to regulatory activity while taxes are a revenue device to raise funds for the general public benefit. They contend that because the fees collected by the Village exceed the "cost of enforcement" and subsidize the maintenance and building of roads, they are a "tax" because the money raised confers a public benefit. Plaintiffs rely on *Homebuilders Association of Charlotte, Inc. v. City of Charlotte, Inc.*, 336 N.C. 37, 442 S.E.2d 45 (1994), for the contention that fees must be roughly equal to the cost of the regulatory program. However, we conclude that *Homebuilders* is inapposite.

In *Homebuilders*, the General Assembly had authorized the City to regulate development, but had not explicitly authorized user fees, and the City imposed user fees to reimburse it for services provided in connection with development activities. *Id.* The North Carolina Supreme Court ruled that the City had the *implied power* to impose such user fees: "municipal power to regulate an activity *implies the power* to impose a fee in an amount sufficient to cover the cost of

regulation." *Id.* at 42, 442 S.E.2d at 49 (emphasis added). Although plaintiffs correctly contend that the Court in *Homebuilders* required that the fees be "reasonable," we do not believe that *Homebuilders* applies here, where the legislature gave the Village express power to impose fees. Rather, we conclude that here the issue is whether the Village has exercised that expressly granted power properly. Thus, we need not address whether the fees charged by the Village are more aptly considered a fee or a tax, but must determine whether the Village exceeded the authority the legislature granted.

In 1997, the General Assembly granted the Village, in its Charter, the authority to regulate motor vehicles as follows:

The Village may by ordinance exempt from the provisions of Articles 3, 3A, 11, and 13 of Chapter 20 of the General Statutes, in whole or in part, the registration, licensing, regulation, inspection, or equipping of motor vehicles and may regulate the use, operation, possession, and ownership of motor vehicles within the jurisdiction of the Village of Bald Head Island. Additionally, notwithstanding the provisions of Chapter 20 of the General Statutes or any other statute, and in addition to those powers now or hereafter conferred by law, the Village shall have the authority to regulate motor vehicles and other means of transportation within the jurisdiction of the Village, including the following:

(1) Regulation of the use and operation of all vehicles, as defined in G.S. 20-4.01(49).

(2) Regulation of all electrically powered vehicles or vehicles powered by fossil fuel or internal combustion engines.

(3) Regulation of the size, weight, lighting, safety standards, and engine or motor size or power characteristics of all vehicles or other means of transportation within the jurisdiction of the. Village.

S.L. 1997-324. In 2002, the General Assembly revised the Charter, in "An Act . . . to clarify that the regulation of motor vehicles on Bald Head Island includes the ability to charge fees for their use on the island," by adding the following provisions:

Regulation of the use and operation of all vehicles, as defined in G.S. 20-4.01(49). The Village may impose a fee on the use of vehicles within the Village's jurisdiction. The amount of the fee may

vary based on criteria that bear upon *the Village's costs arising from the operation of that vehicle on the Village's streets, roads, and rights-of-way. Such criteria may include gross weight, length, number of axles, and motor or engine characteristics.*

\* \* \*

The fees collected under Section 10.1 of this Article shall be used by the Village to finance the establishment and maintenance of the Village's streets, roads, and rights-of-way.

S.L. 2002-129 §§ 10.1 (1) & (2) (emphasis added). The General Assembly made these sections retroactive to 24 July 1997.

Plaintiffs object to the amount of fees collected and the ultimate use of the revenue. However, the General Assembly did not place a limit on the fees, but stated that the amount may be based on "criteria that bear upon the Village's costs" associated with the operation of vehicles on its roads and that such criteria *"may* include gross weight, length, number of axles, and motor or engine characteristics." (Emphasis added). In adopting the ICE ordinance, the Village made the following uncontroverted findings:

[T]he use of the streets and roads within the Village by large, wide, and heavy vehicles cause[s]. . . significant damage to the pavement and shoulders of such streets and roads . . . . Construction delivery vehicles, construction equipment vehicles, delivery, repair and maintenance vehicles, arrival and departure transportation vehicles, public service and utility vehicles . . . are, by their nature, required to carry loads heavier than those for which battery-propelled vehicles are designed.

As the fees are based on a vehicle's weight and width, and on the duration of the permit, we conclude that they are squarely within the legislative grant of power to assess fees based on "criteria that bear upon the Village's costs." Furthermore, in the amended Charter, the General Assembly explicitly stated that the fees must be used to finance "the establishment and maintenance" of the Village's roads. Accordingly, we conclude that the Village has not exceeded its statutory authority.

Plaintiffs also argue that the ICE fees assessed by the Village violate N.C. Gen. Stat. § 20-97, which limits municipal taxes on vehicles to $5.00 per year. N.C. Gen. Stat. § 20-97(b) (2004). However, the General Assembly has explicitly authorized the Village to exempt

itself from Article 2 of Chapter 20, which includes N.C. Gen. Stat. § 20-97. S.L. 1997-324; S.L. 2002-129. Plaintiffs suggest that N.C. Gen. Stat. § 20-97 provides "a complete and integrated regulatory scheme to the exclusion of local regulation," but here, the local regulation was authorized by the State. Furthermore,

> [i]t is a well established principle of statutory construction that a section of a statute dealing with a specific situation controls, with respect to that situation, other sections which are general in their application . . . . When, however, the section dealing with a specific matter is clear and understandable on its face, it requires no construction. In such case, the Court is without power to interpolate or superimpose conditions and limitations which the statutory exception does not of itself contain.

*State ex rel. Utilities Com. v. Lumbee River Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670-71 (1969) (internal citations and quotation marks omitted). Thus, we conclude that this argument has no merit.

Plaintiffs also argue that the ICE ordinance "violates both the North Carolina and United States Constitutions." However, plaintiffs fail to specify which provisions of the constitutions the ordinance allegedly violates, making assertions such as, "[s]imply put, the fees are unconstitutional," and "[the] ordinance . . . is 'inconsistent' with both state and federal constitutions and 'infringes' guaranteed liberties." We cannot review such vague arguments.

> The function of all briefs required or permitted by these rules is to *define clearly the questions presented to the reviewing court* and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. *Review is limited to questions so presented* in the several briefs.

N.C. R. App. P. 28(a) (2004) (emphasis added). Here, plaintiffs' brief does not "define clearly" the question they wish for us to review, and this Court may not "create an appeal for an appellant." *Viar*, 359 N.C. at 402, 610 S.E.2 at 361. Thus, we cannot review these arguments. We also note that to the extent that plaintiffs may have been presenting a commerce clause argument, we lack jurisdiction to review such an argument, as plaintiffs' commerce clause claim was dismissed pursuant to Rule 12(c) and plaintiffs did not appeal from that order nor assign error to the dismissal of this claim. *See* N.C. R. App. P. 3(d) & 10(a) (2004).

Finally, plaintiffs assert that the ICE ordinance deprives them of due process. Here, unlike in their previous constitutional argument, plaintiffs assert a violation of a specific constitutional right, and thus we are able to review this assignment of error. We review substantive due process challenges to economic regulation under the rational basis standard, which "merely" requires that a regulation "bear some rational relationship to a conceivable legitimate interest of government." *Huntington Prop. LLC v. Currituck County*, 153 N.C. App. 218, 230, 569 S.E.2d 695, 704 (2002). We conclude that the ICE fee classification, based on weight and width, as well as duration of use, is rationally related to the Village's regulation and maintenance of its roads. Accordingly, we reject this argument.

Affirmed.

Judges HUNTER and GEER concur.