DURHAM LAND OWNERS ASSOCIATION, an unincorporated Association, ANDERSON HOMES, INC., CIMARRON CAPITAL, INC., d/b/a CIMARRON HOMES, THE DRESS COMPANY d/b/a THE DRESS HOMES COMPANY, M/I HOMES OF RALEIGH, LLC, OLDE SOUTH HOMES, INC., RANDALL H. STEWART, ST. LAWRENCE HOMES, INC., SUN RIVER BUILDERS, INC., THOMAS HUGH MULLEN, 3-D BUILDERS, INC., VANCE CRABTREE BUILDERS, LLC, WESTFIELD HOMES OF THE CAROLINAS, LLC., Plaintiffs v. COUNTY OF DURHAM, Defendant

No. COA05-736

(Filed 6 June 2006)

## 1. Schools and Education— school impact fee—absence of enabling legislation

The statute allowing a county board of commissioners to fix "fees" charged by county officers and employees for performing services or duties permitted or required by law, N.C.G.S. § 153A-102, did not authorize a county to levy a school impact fee upon developers, homebuilders and new homeowners, because: (1) the language of N.C.G.S. § 153A-102 intimates a "fee" more in line with a fixed cost to a recipient for an over-the-counter type service provided by a county officer or employee who is performing that service, processing, or transaction pursuant to law; (2) while "fee" may be susceptible to multiple interpretations, several other aspects of the statute are unambiguous and guide the decision that it does not include a school impact fee when the duty

of providing adequate school facilities is a duty of the county itself and not a duty of the county's officers and employees; (3) giving meaningful effect to the textual limitations on the power to charge fees yields a determination that the services covered are more routine document-oriented tasks that require the assistance of a person within county government; (4) nothing about the statute's context or language suggests it was intended to be used as the county suggests; and (5) the statute is in an article which addresses county administration.

**2. Schools and Education— school impact fee—absence of enabling legislation**

Statutes pertaining to the general police powers of counties and authorizing counties to adopt zoning ordinances, N.C.G.S. §§ 153A-121 and 153A-340, did not provide enabling legislation for a county to impose school impact fees.

**3. Schools and Education— school impact fee—common law**

The common law did not provide authority for a county to impose school impact fees because counties cannot act, in particular generate revenue from the public, without some form of statutory authority.

**4. Schools and Education; Immunity— school impact fee—sovereign immunity—refunds—interest**

An action by plaintiff developers and homebuilders against a county for a declaratory judgment that a school impact fee is unlawful and for a refund of collected fees was not barred by sovereign immunity, and the trial court properly ordered that the unlawfully collected fees be refunded. However, the trial court erred by ordering that the county pay interest on the refunded fees.

Appeal by defendant from orders entered 3 June 2004 and 25 January 2005 by Judges Donald W. Stephens and Orlando F. Hudson, Jr., respectively, in Durham County Superior Court. Heard in the Court of Appeals 7 February 2006.

*Stam, Fordham & Danchi, P.A., by Henry C. Fordham, Jr., for plantiffs-appellees.*

*Durham County Attorney S. C. Kitchen for defendant-appellant.*

*Tharrington Smith, L.L.P., by Michael Crowell and Kathleen P. Tanner, and the North Carolina Schools Boards Association by*

*Allison B. Schafer, for Amicus Curiae North Carolina Schools Boards Association.*

*Camden County Attorney Herbert T. Mullen, Jr. for Amicus Curiae Camden County.*

*Currituck County Attorney Katherine McKenzie for Amicus Curiae Currituck County.*

*Pasquotank County Attorney Michael Cox for Amicus Curiae Pasquotank County.*

ELMORE, Judge.

Plaintiffs, all developers and home builders, sued Durham County (the County) alleging that the County's "school impact fee" was imposed without proper enabling legislation from the General Assembly, and therefore illegal. The trial court agreed, ordered summary judgment in favor of plaintiffs, and mandated that the County refund plaintiffs their payments with interest. The County appealed to this Court arguing that: it possessed the necessary enabling legislation; the trial court erred in awarding plaintiffs summary judgment, repayment of the fees, and interest; and that plaintiffs should not have been allowed to maintain a class action against the County. We affirm in part and reverse in part.

After many years of rejected petitions to the General Assembly requesting enabling legislation to impose a school impact fee, Durham County passed its "Ordinance Adopting Impact Fee Procedures for the Imposition . . . of School Impact Fees to be Imposed on New Residential Construction" (the ordinance). The ordinance is a comprehensive piece of legislation covering all aspects of imposing the fee, including exemptions, waivers, collection, and appeals. It creates a local fund for the fees, an overall cap of fifty percent of necessary facilities spending, and calls for a review every three years. The ordinance's opening recital notes that the County is authorized to impose the impact fee "pursuant to G.S. §§ 153A-102, 153A-121, 153A-340ff, Article IX, Sec. 2(2) of the North Carolina Constitution, and the common law powers of the County[.]" The fee, which is either $2,000.00 or $1,155.00 depending on whether the new home construction is single-family or multi-family units, respectively, is assessed at the time a building permit application is submitted. It must be paid prior to the home's final inspection or issuance of a certificate of occupancy.

While Durham is the first county to pass an impact fee ordinance without specific authority from the General Assembly, each North

Carolina county is facing an intensifying need for funds associated with school construction. "Education is a governmental function so fundamental in this state that our constitution contains a separate article entitled 'Education.' " *Rowan County Bd. of Education v. U.S. Gypsum Co.*, 332 N.C. 1, 10, 418 S.E.2d 648, 655 (1992). And within that article, the General Assembly is vested with the power to "assign to units of local government such responsibility for the financial support of the free public schools as it may deem appropriate." N.C. Const. art. IX, § 2(2). Acting on that authority, the General Assembly has stated: "[i]t is the policy of the State of North Carolina that the facilities requirements for a public education system will be met by county governments." N.C. Gen. Stat. § 115C-408(b) (2005). In an endeavor to meet that policy requirement in the face of continued local growth, the County passed the school impact fee ordinance designed to generate the estimated hundreds of millions in expanding capital expenditures necessary for school improvements and construction.

While a laudable goal, the County must have statutory authority to pass the ordinance requiring the fee. "Counties are creatures of the General Assembly and have no inherent legislative powers. . . . They are instrumentalities of state government and possess only those powers the General Assembly has conferred upon them." *Craig v. County of Chatham*, 356 N.C. 40, 44, 565 S.E.2d 172, 175 (2002) (citations omitted). The County contends that despite lacking specific enabling legislation from the General Assembly, it nevertheless has the authority to issue this type of ordinance.

While plaintiffs disagree with that conclusion, there is no dispute as to any genuine issues of material fact in this appeal. Accordingly then, our standard of review of the trial court's conclusion in favor of plaintiffs is *de novo*. *See Bellsouth Telecomms., Inc. v. City of Laurinburg*, 168 N.C. App. 75, 80, 606 S.E.2d 721, 724 (2005) (review of a trial court's summary judgment order based solely on issues of law is *de novo*).

I.

[1] First, the County argues that section 153A-102 authorizes it to levy school impact fees against plaintiffs and new homeowners. This statute does authorize the County, through its board of commissioners, to set "fees and commissions."

> The board of commissioners may fix the fees and commissions charged by county officers and employees for performing services or duties permitted or required by law. The board may not, however, fix fees in the General Court of Justice or modify the fees of the reg-

ister of deeds prescribed by G.S. 161-10 or the fees of the board of elections prescribed by G.S. 163-107.

N.C. Gen. Stat. § 153A-102 (2005). The issue here is whether the County's school impact fee is a contemplated "fee" authorized by this legislation. In support of an affirmative response, the County notes that any ordinance is presumed valid, *see McNeill v. Harnett County*, 327 N.C. 552, 564-65, 398 S.E.2d 475, 482 (1990) (quotations and citations omitted), and its enabling legislation is to be read broadly, *see* N.C. Gen. Stat. § 153A-4 (2005).

Determining whether the County's impact fees are supported by the authority granted to it in N.C. Gen. Stat. § 153A-102 requires us to ascertain the General Assembly's intent. "In so doing, the context of the Act and the spirit and reason of the law must be considered, for it is the intention of the Legislature, as expressed in the statute, which controls." *Mullen v. Louisburg*, 225 N.C. 53, 58, 33 S.E.2d 484, 487 (1945); *see also Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) ("The foremost task in statutory interpretation is 'to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise.'" (citations omitted)). And if the language of a statute is clear and unambiguous when applying ordinary meaning and grammar to its text, the legislative intent behind it is readily apparent. *See Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 811, 517 S.E.2d 874, 878 (1999). But if the language is ambiguous, or susceptible to multiple interpretations, judicial construction must be grounded in the statute's perceived intent or purpose.

> It is the universal rule that in seeking the intent it is the duty of the Court, where the language of a statute is susceptible of more than one interpretation, to adopt the construction and practical interpretation which best expresses the intention of the Legislature, . . . for 'the heart of a statute is the intention of the lawmaking body.'

*Mullen*, 225 N.C. at 58, 33 S.E.2d at 487 (internal citations omitted).

Amid these general rules, this Court has expressed a specific formulation of judicial construction when dealing with statutes in chapters 153A and 160A of our General Statutes. Section 153A-4 does state that any legislative act affecting counties should be "broadly construed and grants of power shall be construed to include any powers that are reasonably expedient to the exercise of the power." N.C. Gen. Stat. § 153A-4 (2005). And the clear legislative policy and purpose in the

broad construction is so "that the counties of this State . . . [can] have adequate authority to exercise the powers, rights, duties, functions, privileges, and immunities conferred upon them by law." *Id.* But, in conjunction with our general rules of statutory construction, only if there is an ambiguity in a statute found in chapter 153A should section 153A-4 be part of the courts' interpretative process. If, however, the statute is clear on its face, the plain language of the statute controls and section 153A-4 remains idle.

> Though not without nuances and distinguishing factors, we find *Homebuilders, Bowers,* and *Smith Chapel* to be consistent statements of the law and in accord with N.C. Gen. Stat. § 160A-4. The narrow Dillon's Rule of statutory construction used when interpreting municipal powers has been replaced by N.C. Gen. Stat. § 160A-4's mandate that the language of Chapter 160A be construed in favor of extending powers to a municipality where there is an ambiguity in the authorizing language, or the powers clearly authorized reasonably necessitate "*additional and supplementary powers*" "*to carry them into execution and effect*[.]" N.C. Gen. Stat. § 160A-4 (emphasis added); *see Homebuilders Assn. of Charlotte,* 336 N.C. at 45, 442 S.E.2d at 50. However, where the plain meaning of the statute is without ambiguity, it "must be enforced as written." *Bowers,* 339 N.C. at 419-20, 451 S.E.2d at 289; *see also Smith Chapel Baptist,* 350 N.C. at 812, 517 S.E.2d at 879.

*BellSouth,* 168 N.C. App. at 82-83, 606 S.E.2d at 726.

Despite the County's argument that section 153A-102 supports a broad grant of power to levy fees in compensation for virtually any duty of the County, there is little case law or legislative action surrounding the statute. In fact, the County has not offered any example of the fees it currently charges pursuant to section 153A-102, save for these impact fees. Even so, we hold that section 153A-102 fails to support the County's argument that it is authorized to charge school impact fees. The language of section 153A-102 intimates a "fee" in this context is more in line with a fixed cost to a recipient for an over-the-counter type service provided by a county officer or employee who is performing that service, processing, or transaction pursuant to law. And, while "fee" may indeed be susceptible to multiple interpretations, several other aspects of the statute are unambiguous and guide our decision that it does not include the fee here.

Foremost, the duty of providing adequate school facilities is a duty of the County itself, not a duty of the County's "officers and employees."

The plain language of the statute limits the board of commissioners' power to fix only those fees "charged by county officers and employees for performing services or duties permitted or required by law." N.C. Gen. Stat. § 153A-102 (2005). Although "their" is not found between "performing" and "services," the statute's design and language imply it. Unlike processing a permit, reviewing an application, or maintaining records, the County's officers or employees are not actually going out and building schools. In other words, section 153A-102 is not a broad based, revenue generating provision designed to offset the cost of any service *the County* provides, but only those services that its officers or employees provide pursuant to their position within county government.

The statute's second sentence discussing limitations on the power to fix fees substantially favors this interpretation as well. The County may not fix the fees "in the General Court of Justice or modify the fees of the register of deeds prescribed by G.S. 161-10 or the fees of the board of elections prescribed by G.S. 163-107." N.C. Gen. Stat. § 153A-102 (2005). The fees found in N.C. Gen. Stat. § 161-10 (2005) are those associated with doing business in the register of deeds office— interacting with the personnel. The highest listed fee is $50.00 for issuance and processing of a marriage license. The fees located in N.C. Gen. Stat. § 163-107 are filing fees for elected office; the current fee is set at 1% of the annual salary of the office sought. *See* N.C. Gen. Stat. § 163-107 (2005). The court system also has fees set for filing, docketing, processing, and maintaining a multitude of documents and records. Interpreting the County's ability to set school impact fees—designed to offset the cost of building school facilities throughout the county— under this statute would leave the clear legislative limitations on this power rather perfunctory or arbitrary. Instead, giving meaningful effect to the textual limitations on the power to charge fees yields a determination that the services covered are more routine, document-oriented tasks, that require the assistance of a person within county government.

Also, the statute is located in Article 5 of Chapter 153A, which addresses county administration. Section 153A-102's origin is a 1953 act by the General Assembly entitled "AN ACT TO AUTHORIZE THE COUNTY COMMISSIONERS OF EACH COUNTY IN THIS STATE TO FIX THE SALARIES OR OTHER COMPENSATION OF ALL ELECTIVE AND APPOINTIVE COUNTY OFFICIALS AND EMPLOYEES DRAWING COMPENSATION FROM SAID COUNTIES." 1953 N.C. Sess. Laws ch. 1227, §§ 1-3. Later, in 1969, the General Assembly modified the Board's ability to "fix salaries, fees, and number of employees." *See* 1969 N.C.

Sess. Laws. ch. 358, § 1. Although the statute's section has been renumbered, its language has not been altered since 1973. *See* 1973 N.C. Sess. Laws ch. 822, § 1. Nothing about the statute's context or language suggest it was intended to be used as the County suggests here. Indeed, Articles 7 and 9, addressing taxation and special assessments, contain powers more in line with what the County maintains this section provides it with.

In sum, we do not agree with the County that *its* constitutional and legislative duty—as opposed to the duties of its officers and employees—to provide facilities for public schools is the type of service or duty contemplated by section 153A-102 for which a "fee" can be charged.

## II.

[2] The County argues that several other statutes provide enabling legislation for the school impact fees including N.C. Gen. Stat. §§ 153A-121 and 153A-340. We disagree.

Section 153A-121 establishes that counties have general police powers and, pursuant to that power, "may by ordinance, define, regulate, prohibit, or abate acts, omissions, or conditions detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the county[.]" N.C. Gen. Stat. § 153A-121(a) (2005). And section 153A-340 authorizes the County to "adopt zoning and development regulation ordinances" for the purpose of "promoting health, safety, morals, or the general welfare[.]" N.C. Gen. Stat. § 153A-340(a) (2005). Pursuant to section 153A-341, the County's aforementioned ordinances "shall be made in accordance with a comprehensive plan and designed . . . to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements." N.C. Gen. Stat. § 153A-341 (2003).

Relying in part on *Homebuilders Assn. of Charlotte v. City of Charlotte*, 336 N.C. 37, 442 S.E.2d 45 (1994), which interprets mirrored county regulatory provisions in city government, the County argues it has the ability to charge the school impact fee "as an additional and supplementary power that is reasonably necessary or expedient to carry a regulatory program into execution and effect." *Id.* at 45, 442 S.E.2d at 50. In *Homebuilders*, the plaintiffs filed suit to keep the City of Charlotte from instituting "user fees" for certain government services, all of which were related to using public facilities or the local government's regulatory function. *Id.* at 39-40, 442 S.E.2d at 47-48. The Supreme Court held that applying section 160A-4's broad construction

to the regulatory and police powers of cities supported a determination that Charlotte's user fee schedule was "reasonably necessary or expedient to the execution of the City's power to regulate the activities for which the services are provided." *Id.* at 45, 442 S.E.2d at 50. Since counties have almost identical police and regulatory powers, as well as a legislative mandate according to section 153A-4 to have any powers "reasonably expedient to the exercise of the power," the County argues *Homebuilders* recognizes its authority to charge the fee.

While perhaps not stating it explicitly, we do not believe the Supreme Court intended to allow a city or county's zoning power to authorize it to charge a fee for providing *its* actual governmental services to the public. Instead, the Court recognized that cities, unlike counties, did not have a specific "fee" statute (like section 153A-102) and charging fees for document reviews and approvals was expedient to the cities' given power to control zoning and development. The user fees listed in *Homebuilders* are all for permit reviews and application-processing type services. *See Homebuilders*, 336 N.C. at 40-41, 442 S.E.2d at 48 (listing, for example: commercial permit review, floodplain analysis, and final plat review). We do not read *Homebuilders* to allow counties to charge a fee for, again, its own services such as school construction.

The County argues that *Home Builders and Contractors Assoc. of Palm Beach County v. Board of County Commissioners of Palm Beach County*, 446 So. 2d 140 (Fla. Ct. App. 1983) is persuasive authority for its position. There, the appellate court determined that the county's road impact fee was a regulation, not a tax, and was supported by the broad regulatory powers given to Florida counties.

The appropriate framework for determining whether an impact fee is a regulation or a tax is one of public policy in which a number of factors should be weighed. The home rule powers granted local governments in Florida, the legislative mandate that local governments must plan comprehensively for future growth, and the additional broad powers given them to make those plans work effectively, indicate that properly limited impact fees for educational or recreational purposes should be construed as regulations. Characterization as a regulation is particularly appropriate where an impact fee is used to complement other land use measures such as in lieu fees or dedications. If an impact fee is characterized as a regulation, its validity should then be determined by reference to the dual rational nexi police power standard.

*Id.* at 145 (quoting Julian C. Juergensmeyer & Robert M. Blake, *Impact Fees: An Answer to Local Governments' Capital Funding Dilemma*, 9 Fla. St. U. L. Rev. 415, 440-41 (1981)). Although the Florida appellate court found impact fees a permissible regulation within the power of its counties, we do not find this logic persuasive. That far reaching determination is more appropriate for legislative drafting than this Court's judicial construction.

Accordingly then, we can find no authority to support a determination that pursuant to the County's zoning and general police powers that it has the necessary statutory authority to impose a school impact fee.

### III.

[3] Although plaintiffs bring forth several other claims regarding the County's lack of statutory authority to impose an impact fee, we do not need to address them here. But since the County contends that this state's common law provides the authority to impose the school impact fee, we will address that.

The County argues that when "there is a constitutional mandate to provide an adequate education combined with the constitutional guarantee to use revenues to fund these constitutional mandates, the common law provides the authority to raise funds to meet the constitutional requirements imposed on counties." We cannot agree. Considering that counties cannot act, in particular generate revenue from the public, without some form of *statutory* authority, the County's common law argument is plagued with shortcomings.

### IV.

[4] Since we have determined there is no authority for the County to collect its school impact fee, we must now determine whether the trial court's remedy of a refund plus interest is appropriate. The County argues several theories in support of the contention that it is not required to refund the fees.

First, the County argues that since N.C. Gen. Stat. § 1A-1, Rule 23 (2005) (allowing class actions), does not mention the state or counties specifically, and because counties enjoy sovereign immunity unless waived by statute, then all class actions against the state or its counties are barred by sovereign immunity. Although perhaps accurately stated in its parts, we do not agree with the legal sum of those parts: that the absence of "state" or "counties" in Rule 23 means that neither can be sued in a class action. Indeed, the County can cite us no North Carolina

case holding as such. In fact, although not precisely addressed, our appellate courts have allowed class action declaratory judgment suits that seek injunctive and payment relief against the State. *See Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 345 N.C. 683, 696-99, 483 S.E.2d 422, 430-32 (1997) (class action case against the State in which the Court dismissed a sovereign immunity challenge to a part of the suit, but affirmed the award in favor of class action plaintiffs); *Faulkenbury v. Teachers' & State Employees' Retirement System*, 108 N.C. App. 357, 376, 424 S.E.2d 420, 430 (1993) ("The North Carolina Supreme Court has emphasized that class actions are appropriate and should be permitted when they can 'serve useful purposes' such as preventing a multiplicity of suits or inconsistent results."). Furthermore, when determining whether sovereign immunity bars a suit, the manner in which the case is brought, whether by class action or individually, is not necessarily as important as the actual claims and violations alleged. *See Peverall v. County of Alamance*, 154 N.C. App. 426, 429-30, 573 S.E.2d 517, 519 (2002) (allowing a class action against a county on some claims, but barring other specific claims due to sovereign immunity), *disc. review denied*, 356 N.C. 676, 577 S.E.2d 632 (2003).

Second, and in step with that determination, the County argues that plaintiffs' declaratory judgment action and action for a refund are barred by sovereign immunity. We disagree. In a comparable case to ours, the North Carolina Supreme Court awarded the plaintiffs a refund of fees paid pursuant to a city ordinance enacted without proper enabling legislation. *See Smith Chapel Baptist Church*, 350 N.C. at 819, 517 S.E.2d at 883.

> In the instant case, because we have already held that the City's SWU ordinance and the fees charged thereunder are invalid as a matter of law, we further hold that plaintiffs are entitled to a full refund of the illegally collected fees from the City, plus interest on those fees to the date of judgment.

*Id.* In so doing, the Court likened the action to the common law doctrine of "an action for money had and received." *Id.* at 818, 517 S.E.2d at 882-83. Although any sovereign immunity defense to this type of action was tacitly rejected by our Supreme Court, we are further persuaded by *Charlotte-Mecklenburg Hospital Auth. v. N.C. Industrial Comm.*, 336 N.C. 200, 443 S.E.2d 716 (1994), in which the Court rejected the defense of sovereign immunity to a declaratory judgment action alleging that the Industrial Commission created a regulation beyond its statutory authority. In so doing, the Court minimized the distinction in these actions

between naming defendants as public officers enforcing an allegedly invalid regulation, an action not cloaked in sovereign immunity, and directly naming the body that passed the regulation or ordinance, an action that was long considered shielded.

There is no difference in principle between an attempt to enforce an invalid regulation and the initial adoption or enactment of such a regulation; both are in excess of the authority granted the agency under the statute and invade or threaten to invade personal or property rights of a citizen in disregard of the law. We therefore hold that the doctrine of sovereign immunity does not authorize the dismissal of plaintiff hospitals' complaint alleging that defendant Commission and its members, in excess of their statutory authority, adopted an invalid regulation.

*Id.* at 208, 443 S.E.2d at 721.

Third, the County argues that if it is subject to a declaratory judgment action and an action for a refund of the fees, then it should not be required to pay interest on the refunded fees. We agree with this contention. For more than sixty years our Supreme Court has held that post-judgment interest "may not be awarded against the State unless the State has manifested its willingness to pay interest by an Act of the General Assembly or by a lawful contract to do so." *Yancey v. Highway Commission*, 222 N.C. 106, 109, 22 S.E.2d 256, 259 (1942). That rule has been applied in numerous cases of this Court as well. *See, e.g., McGee v. N.C. Dep't of Revenue*, 135 N.C. App. 319, 520 S.E.2d 84 (1999); *Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 132 N.C. App. 137, 510 S.E.2d 675, *disc. review denied*, 350 N.C. 379, 536 S.E.2d 620 (1999); *Myers v. Dept. of Crime Control*, 67 N.C. App. 553, 313 S.E.2d 276 (1984). Despite the County's unauthorized actions here, there is no statutory authority for the award of interest in this circumstance, nor is there evidence of a contract. Thus, the trial court erred as a matter of law in ordering the County to award plaintiffs interest on the money collected and to be refunded. *See Shavitz v. City of High Point*, 177 N.C. App. 465, 486, 630 S.E.2d 4, 18 (2006) (in an action for a refund of fines, post-judgment interest could not be awarded against a city).

Plaintiffs cite to *Smith Chapel* for authority that the County's refund is subject to an award of interest. Plaintiffs are correct in that the Supreme Court in *Smith Chapel* did award "a full refund of the illegally collected fees from the City, *plus interest* on those fees to the date of judgment." *Smith Chapel Baptist Church*, 350 N.C. at 819, 517 S.E.2d at 883 (emphasis added). Yet, there is nothing to suggest that in doing so

the Supreme Court was changing an otherwise long standing rule that the State—and vicariously its political subdivisions—does not pay interest under N.C. Gen. Stat. § 24-5 on judgments against it. In fact, although not stated, the Supreme Court in *Smith Chapel* was dealing with a city's fixed fee for providing storm water removal, a public enterprise. "[O]ur courts have clearly stated that in setting rates for public enterprise services, municipalities act in a proprietary role." *Pulliam v. City of Greensboro*, 103 N.C. App. 748, 753, 407 S.E.2d 567, 569-70, *disc. review denied*, 330 N.C. 197, 412 S.E.2d 59 (1991). And when a municipality is engaged in a proprietary function, it operates without governmental immunity. *See id.* at 751, 407 S.E.2d at 568 (quoting *McCombs v. City of Asheboro*, 6 N.C. App. 234, 238, 170 S.E.2d 169, 172 (1969)). That is not the case here concerning a county's imposition of a school construction fee without appropriate authority.

V.

In conclusion, after reviewing the authority and reasoning on each side, we have determined that the trial court did not err in deciding that the County's school impact fee was unlawful, void, and without legal effect. It also did not err in ordering that a refund of the collected and separately maintained school impact fees is an appropriate remedy for the County's actions. We have determined, however, that the trial court. did err in awarding interest on those refunded fees.

We have further reviewed the County's remaining assignments of error briefed and found them to be without merit. Accordingly, we affirm the trial court's order of summary judgment in favor of plaintiffs in all respects save for the award of interest, which we reverse.

Affirmed in part, reversed in part.

Judges McCULLOUGH and LEVINSON concur.