FIVE C'S, INC., Plaintiff v. COUNTY OF PASQUOTANK, Defendant

No. COA08-771

(Filed 17 February 2009)

**Zoning— manufactured homes—age—absence of—appearance and dimensional criteria**

A county ordinance requiring manufactured homes to be no more than 10 years old in order for the owner to obtain a building permit for permanent set up exceeded the county's statutory authority because it does not employ appearance and dimensional criteria as intended by the General Assembly in N.C.G.S. §§ 153A-341.1 and 160A-383.1.

Appeal by plaintiff from judgment entered 10 April 2008 by Judge J. Richard Parker in Pasquotank County Superior Court. Heard in the Court of Appeals 28 January 2009.

*Hornthal, Riley, Ellis & Maland, L.L.P., by Benjamin M. Gallop and John D. Leidy, for plaintiff-appellant.*

*The Twiford Law Firm, P.C., by John S. Morrison and T. Taylor Manning, for defendant-appellee.*

HUNTER, JR., Robert N., Judge.

Five C's, Inc. ("plaintiff") appeals from judgment entered, which granted the County of Pasquotank's ("the County") motion for summary judgment. We reverse.

## I. Background

On 17 August 1992, the County adopted an Ordinance To Provide for Allowable Manufactured/Mobile Home Units ("the Ordinance") "under the authority of Chapter 153A-121 of the General Statutes of North Carolina." The Ordinance's purpose was "to regulate allowable manufactured homes or mobile homes within the jurisdiction of [the County] in order to promote the public health, safety and general welfare of the citizens of [the County]." Article II of the Ordinance contained the following definitions:

1. Mobile Home: Mobile home shall mean a transportable structure designed to be used as a year-round residential dwelling and built prior to the enactment of the National Manufactured Housing Construction and Safety Standards Act of 1974 which became effective June 15, 1976.

2. Manufactured Home: Manufactured home shall mean a single family dwelling fabricated in an off site manufacturing facility for installing or assembling on the building site bearing a seal certifying that it was built in compliance with the National Manufactured Housing and Construction and Safety Standards Act of 1974 which became effective June 15, 1976.

Article III of the ordinance stated "[m]anufactured homes must have an attached HUD label to be brought into [the County] for the purpose of permanent set-up."

On 21 May 2001, the County's Board of Commissioners considered "proposed changes to the Ordinance to Limit Manufactured Homes that Are Brought into [the County] to Not More than Ten Years Old." The meeting's minutes state:

County Attorney Brenda White provided her opinion regarding the proposed amendments. She explained that a county is allowed under its police power to protect the health, safety, welfare, and environment within the county. She summarized case law that placed within the authority of the governing board to regulate those things under its police power. She said the county's proposal to limit the age of mobile homes that are brought into the county was based upon the evaluation of the county's tax base and the services that the county is required to provide for all residents of the county in contrast to the revenues generated to pay for those services. She noted that according to manufactured home values provided by the Tax Administrator there is a substantial decrease in the value of a manufactured home during the first 10 years, and that a 10-year old manufactured home has about the same value as a used vehicle. Ms. White stated that she believes it is within the county's authority to enact the proposed regulations.

The proposed change to the Ordinance passed by a four-to-two vote. Article III was amended to state "[m]anufactured homes must have an attached HUD label and shall not be more than ten (10) years old on the date of application for a building permit for the purpose of permanent set-up."

Plaintiff acquires mobile and manufactured homes for sale, transportation, and set up within the County. Plaintiff filed a complaint on 7 September 2001 seeking a declaratory judgment that the amendment exceeded the County's statutory authority and violated plaintiff's substantive due process, procedural due process, and equal

FIVE C'S, INC. v. COUNTY OF PASQUOTANK

[195 N.C. App. 410 (2009)]

protection rights. Plaintiff also sought both a preliminary and permanent injunction restraining the County from enforcing the Ordinance as amended.

Plaintiff alleged: (1) it had an inventory of ten manufactured homes more than ten years old on 21 May 2001; (2) it entered into a contract sometime between 21 May 2001 and 5 June 2001 to sell and set up a twenty-three-year-old manufactured home; (3) it applied for a building permit for the permanent setup of this manufactured home on 5 June 2001; (4) the County "denied [its] application for a building permit because the manufactured home was more than ten years in age on the date of [its] application and because the manufactured home was not listed in the Pasquotank County Tax Assessor's office as of the date the ordinance was ratified[;]" (4) it applied for a building permit for the permanent setup of a mobile home on 17 August 2001; and (5) the County denied its application for the same reasons the County denied its 5 June 2001 application.

On 26 November 2001, the County answered plaintiff's complaint and moved to dismiss. Plaintiff filed a motion for summary judgment on 5 January 2006 and the case was scheduled for a non-jury trial. Plaintiff and the County subsequently advised the trial court that the case "was in the proper posture for summary judgment[.]" The trial court entered summary judgment in favor of the County on 10 April 2008. Plaintiff appeals.

## II.  Issues

Plaintiff argues the trial court erred when it entered summary judgment in favor of the County because the County: (1) exceeded its statutory authority; (2) violated plaintiff's due process rights; and (3) violated plaintiff's equal protection rights.

## III.  Standard of Review

This Court reviews a trial court's order for summary judgment *de novo* to determine "whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003); *Robins v. Town of Hillsborough*, 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007).

## IV.  Statutory Authority

Plaintiff argues the County "exceeded its statutory authority by restricting the location of manufactured homes within [the County] based solely on age." We agree.

**FIVE C'S, INC. v. COUNTY OF PASQUOTANK**

[195 N.C. App. 410 (2009)]

"Counties are creatures of the General Assembly and have no inherent legislative powers. They are instrumentalities of state government and possess only those powers the General Assembly has conferred upon them." *Craig v. County of Chatham*, 356 N.C. 40, 44, 565 S.E.2d 172, 175 (2002) (citations omitted).

In 1874, our Supreme Court adopted what has become known as Dillon's Rule:

a municipal corporation possesses and can exercise the following powers and no others: First, those granted in *express words*; second, those *necessarily or fairly implied in* or *incident to* the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation.

*Smith v. Newbern*, 70 N.C. 14, 18 (1874), *modified*, 73 N.C. 303 (1875) (citations omitted). Recently, however, Dillon's Rule has come under attack.

In 1973, the General Assembly enacted Section 153A-4 of the North Carolina General Statutes. N.C. Gen. Stat. § 153A-4 (2001) states:

It is the policy of the General Assembly that the counties of this State should have adequate authority to exercise the powers, rights, duties, functions, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter and of local acts shall be broadly construed and grants of power shall be construed to include any powers that are reasonably expedient to the exercise of the power.

In *Homebuilders Assn. of Charlotte v. City of Charlotte*, our Supreme Court analyzed the interplay of Dillon's Rule with N.C. Gen. Stat. § 160A-4 (1987), a statute similar to that of N.C. Gen. Stat. § 153A-4. 336 N.C. 37, 43-44, 442 S.E.2d 45, 49-50 (1994); *see also* N.C. Gen. Stat. § 160A-4 (2001). Our Supreme Court held "that the proper rule of construction is the one set forth in [N.C. Gen. Stat. § 160A-4]." *Homebuilders Assn. of Charlotte*, 336 N.C. at 44, 442 S.E.2d at 50.

This Court has since interpreted *Homebuilders Assn. of Charlotte* to state that Dillon's Rule was overruled by N.C. Gen. Stat. § 160A-4. *See BellSouth Telecomms., Inc. v. City of Laurinburg*, 168 N.C. App. 75, 81, 606 S.E.2d 721, 725 ("In its reading of N.C. Gen. Stat. § 160A-4, the [Supreme] Court found that the narrow rule of construction established over some 100 years prior by common law,

known as 'Dillon's Rule,' had been replaced by the legislature's 1971 enactment." (citing *Homebuilders Assn. of Charlotte*, 336 N.C. at 43-44, 442 S.E.2d at 49-50 and *Smith*, 70 N.C. at 14)), *disc. review denied*, 615 S.E.2d 660 2005). This Court has also stated since *Homebuilders Assn. of Charlotte* that:

> [N.C. Gen. Stat. §] 153A-4 does state that any legislative act affecting counties should be "broadly construed and grants of power shall be construed to include any powers that are reasonably expedient to the exercise of the power." And the clear legislative policy and purpose in the broad construction is so "that the counties of this State . . . [can] have adequate authority to exercise the powers, rights, duties, functions, privileges, and immunities conferred upon them by law." But, in conjunction with our general rules of statutory construction, only if there is an ambiguity in a statute found in chapter 153A should section 153A-4 be part of the courts' interpretative process. If, however, the statute is clear on its face, the plain language of the statute controls and section 153A-4 remains idle.

*Durham Land Owners Ass'n v. County of Durham*, 177 N.C. App. 629, 633-34, 630 S.E.2d 200, 203 (citations omitted), *disc. review denied*, 360 N.C. 532, 633 S.E.2d 678 (2006).

Plaintiff argues the County's general power to enact ordinances under Section 153A-121 of the North Carolina General Statutes was preempted with regard to the zoning of manufactured housing when the General Assembly adopted N.C. Gen. Stat. §§ 153A-341.1 and 160A-383.1 in 1987. *See* N.C. Gen. Stat. § 153A-121(a) (2001) ("A county may by ordinance define, regulate, prohibit, or abate acts, omissions, or conditions detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the county; and may define and abate nuisances."). To determine whether the General Assembly intended to preempt its broad grant of authority under N.C. Gen. Stat. § 153A-121, with its subsequent adoption of N.C. Gen. Stat. §§ 153A-341.1 and 160A-383.1, we must decide if it has shown an intent to limit a county's power with regard to zoning regulations for manufactured homes. "In so doing, the context of the Act and the spirit and reason of the law must be considered, for it is the intention of the Legislature, as expressed in the statute, which controls." *Mullen v. Louisburg*, 225 N.C. 53, 58, 33 S.E.2d 484, 487 (1945); *see also Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) ("The foremost task in statutory interpretation is ' "to determine legislative intent while giving the language

of the statute its natural and ordinary meaning unless the context requires otherwise." ' " (citations omitted)).

N.C. Gen. Stat. § 153A-341.1 (2001) states "[t]he provisions of [N.C. Gen. Stat. §] 160A-383.1 shall apply to counties." N.C. Gen. Stat. § 160A-383.1 (2001) states:

> (a) The General Assembly finds and declares that manufactured housing offers affordable housing opportunities for low and moderate income residents of this State who could not otherwise afford to own their own home. The General Assembly further finds that some local governments have adopted zoning regulations which severely restrict the placement of manufactured homes. It is the intent of the General Assembly in enacting this section that cities reexamine their land use practices to assure compliance with applicable statutes and case law, and consider allocating more residential land area for manufactured homes based upon local housing needs.

> . . . .

> (d) A city may adopt and enforce appearance and dimensional criteria for manufactured homes. Such criteria shall be designed to protect property values, to preserve the character and integrity of the community or individual neighborhoods within the community, and to promote the health, safety and welfare of area residents. The criteria shall be adopted by ordinance.

The General Assembly made "the context of [N.C. Gen. Stat. §§ 153A-341.1 and 160A-383.1] and the spirit and reason of the law" clear in subsection (a) of N.C. Gen. Stat. § 160A-383.1. *Mullen*, 225 N.C. at 58, 33 S.E.2d at 487. The plain language of N.C. Gen. Stat. §§ 153A-341.1 and 160A-383.1 therefore controls and N.C. Gen. Stat. § 153A-4 remains idle. *Durham Land Owners Ass'n*, 177 N.C. App. at 634, 630 S.E.2d at 203. N.C. Gen. Stat. § 160A-383.1, as made applicable to counties by N.C. Gen. Stat. § 153A-341.1, limits a county's power to enact zoning regulations for manufactured homes. If this Court interprets N.C. Gen. Stat. §§ 153A-341.1 and 160A-383.1 any other way, N.C. Gen. Stat. § 160A-383.1(d) becomes meaningless. A county may not therefore use its broad police powers as a guise to enact zoning regulations for manufactured homes inconsistent with N.C. Gen. Stat. § 160A-383.1.

In *White v. Union County*, this Court, interpreting N.C. Gen. Stat. §§ 153A-340, -341.1, and 160A-383.1, held that the trial court erred

when it allowed Union County's motion to dismiss for failure to state a claim pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). 93 N.C. App. 148, 152, 377 S.E.2d 93, 95 (1989). In *White,* the plaintiffs contended that Union County's land use ordinance requiring

> a resident prove his/her mobile home to be worth at least $5,000.00 in order for that resident to reside in such a mobile home within Union County, is not a legal regulation of land use, and is therefore an *ultra vires* ordinance, in violation of N.C.G.S. § 153A-340.

*Id.* at 150, 377 S.E.2d at 94. This Court stated:

> The nub of [the] plaintiffs' argument [was] that the legislature ha[d] granted the county authority to draft ordinances limiting structures, and mobile homes specifically, only in qualitative terms and not by way of an arbitrary money value. Given the requirements of Dillon's Rule, [the] plaintiffs . . . stated a direct attack on the ordinance so long as they [could] show that the attack [was] timely under N.C.G.S. § 153A-348.

*Id.* at 152, 377 S.E.2d at 95.

Here, the Ordinance, as amended, states "[m]anufactured homes must have an attached HUD label and shall not be more than ten (10) years old on the date of application for a building permit for the purpose of permanent set-up." At the time of the adoption of the amendment to the Ordinance, the rational basis proffered by the proponents of the Ordinance was to increase the tax base. At oral argument, counsel for the County contended that increasing the tax base by requiring manufactured homes to have a certain value was a legitimate governmental interest. This contention was advanced by the record evidence of Chairman Wood who stated:

> [T]here is a significant tax problem in this situation because rental mobile homes are taxed as personal property and the values decrease substantially over a ten year period. [Chairman Wood] said the county provides services for these property owners, but has no vehicle for collecting sufficient revenues to pay for these services.

The intent of the Ordinance is to increase the tax base by elimination of housing which rapidly depreciates in value. This wealth based criterion is neither an appearance nor dimensional criteria. The nexus between the County's intention and its statutory authority "to protect property values, to preserve the character and integrity of

the community or individual neighborhoods within the community, and to promote the health, safety and welfare of area residents[]" is too tenuous. N.C. Gen. Stat. § 160A-383.1(d). The County cannot accomplish by indirect legislation what it cannot achieve by direct legislation. The County therefore exceeded the power the General Assembly has conferred upon it with regard to zoning regulations for manufactured homes. The trial court erred when it denied plaintiff's motion for summary judgment and entered summary judgment in favor of the County.

In light of our holding, it is unnecessary to review plaintiff's remaining assignments of error.

## V. Conclusion

The Ordinance, as amended, does not employ appearance and dimensional criteria as intended by the General Assembly in N.C. Gen. Stat. §§ 153A-341.1 and 160A-383.1. The County exceeded its statutory authority. The trial court erred when it denied plaintiff's motion for summary judgment and entered summary judgment in favor of the County. The trial court's judgment is reversed.

Reversed.

Judges McGEE and JACKSON concur.