UNION LAND OWNERS ASSOCIATION, AN UNINCORPORATED ASSOCIATION; CRAFT DEVELOPMENT LLC, A NORTH CAROLINA LIMITED LIABILITY COMPANY; R.D. HARRELL COMPANY, A NORTH CAROLINA CORPORATION; FAIRVIEW DEVELOPERS, INC., A NORTH CAROLINA CORPORATION, PLAINTIFFS V. THE COUNTY OF UNION, A POLITICAL SUBDIVISION OF THE STATE OF NORTH CAROLINA, DEFENDANT

No. COA09-35

(Filed 8 December 2009)

**Zoning— school impact fees—indirect imposition**

    In an action concerning the impact of residential developments on schools, the county's adoption of an Adequate Public Facilities Ordinance (APFO) that included a Voluntary Mitigation Payment (VMP) and similar measures was in excess of its statutory authority. Defendant may not use the APFO to obtain indirectly the payment of what amounts to an impact fee given that defendant lacks the authority to impose school impact fees directly.

UNION LAND OWNERS ASS'N v. CNTY. OF UNION

[201 N.C. App. 374 (2009)]

Appeal by plaintiffs from an order entered 24 September 2008 by Judge Christopher M. Collier in Union County Superior Court. Heard in the Court of Appeals 10 June 2009.

*Burns, Day & Presnell, P.A., by Daniel C. Higgins and James J. Mills, for plaintiffs-appellants.*

*Perry, Bundy, Plyler & Long, L.L.P., by H. Ligon Bundy and Melanie D. Cox, and White & Smith, LLC, by S. Mark White, for defendant-appellee.*

*Tharrington Smith, L.L.P., by Deborah R. Stagner, and General Counsel Allison B. Shafer, for North Carolina School Boards Association, Amicus Curiae.*

*General Counsel James B. Blackburn, III for North Carolina Association of County Commissioners and Poyner Spruill LLP by Robin Tatum Currin and Chad W. Essick for North Carolina Association of County Commissioners and International Municipal Lawyers Association, Amici Curiae.*

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Craig D. Justus, for North Carolina Home Builders Association, North Carolina Association of Realtors, and Piedmont Public Policy Institute; General Counsel J. Michael Carpenter for North Carolina Home Builders Association; and Counsel Richard A. Zechini for North Carolina Association of Realtors, Amici Curiae.*

JACKSON, Judge.

Union Landowners Association, Craft Development LLC, R.D. Harrell Company, and Fairview Developers, Inc. ("plaintiffs") appeal from the trial court's order granting summary judgment for Union County ("defendant"). For the following reasons, we reverse and remand.

In 1998, 2000, and 2005, defendant sought authority from the North Carolina General Assembly to impose school impact fees upon developers in Union County. Each attempt failed. After the failure of the most recent attempt to obtain legislative action, defendant initiated plans for a subdivision development approval moratorium, which allowed defendant time to draft the Adequate Public Facilities Ordinance ("APFO").

On 2 October 2006, defendant amended the Union County Land Use Ordinance by adopting the APFO and a resolution establishing a

procedure for calculating the amount of a Voluntary Mitigation Payment ("VMP"). The APFO provides county planners and developers with a methodology for evaluating the impact of proposed residential developments on schools within unincorporated areas of Union County. Ultimately, the APFO methodology is intended to assist defendant in determining whether to issue or deny development permits.

The size of the proposed development and estimated school capacities are two factors considered during the evaluation of a proposed development. If a proposed development's impact would not overburden the capacity of schools serving the development, the proposal is approved without additional consideration. However, if the impact would overburden the capacity of schools serving the development, the proposal is denied outright or approved subject to compliance with certain conditions intended to mitigate the impact on school capacity issues.

These conditions include: (1) deferring approval for five years; (2) postponing development until school capacity becomes available; (3) scheduling the development to match the rate of school capacity growth; (4) redesigning the proposed development to reduce the impact on school capacity; (5) requesting minor plat approval so as to exempt the proposed development from APFO conditions; (6) offsetting any excess impact on school capacity resulting from the proposed development by providing a VMP to the County; (7) constructing school facilities to offset the proposed development's impact in excess of estimated school capacity; or (8) satisfying, with defendant's approval, other reasonable conditions offsetting the proposal's impact on the capacity of schools serving the proposed development. Union County, N.C., Union County Land Use Ordinance art. XXIII §§ 363, 366, 372 (2006).

On 1 December 2006, plaintiffs brought an action against defendant, requesting that the trial court, *inter alia*, (1) declare the APFO null and void as being unlawful and *ultra vires*; (2) order defendant to refund fully any and all fees paid by plaintiffs pursuant to the APFO, including, but not limited to, VMPs, with interest; and (3) enjoin defendant and defendant's agents from enforcing the APFO and from refusing to approve developments and other permits based upon the APFO. On 22 February 2007, plaintiffs filed an amended complaint, adding a discrimination claim seeking declaratory relief pursuant to section 1983 of title 42 of the United States Code.

On 7 August 2008, defendant filed a motion for summary judgment. On 8 August 2008, plaintiffs filed a motion for summary judgment. On 15 August 2008, plaintiffs filed objections and a motion to strike.

The trial court conducted a hearing on the cross-motions for summary judgment, objections, and motion to strike on 18 August 2008. Subsequently, plaintiffs amended their objections and motion to strike, and defendant filed objections and a motion to strike. On 24 September 2008, the trial court entered its order granting defendant's motion for summary judgment and declaring that the APFO was within defendant's delegated authority and constitutional. The trial court denied plaintiffs' motion for summary judgment and plaintiffs' objections and motion to strike. Plaintiffs appeal.

There is no dispute as to any genuine issue of material fact in this appeal. Accordingly, the standard of review of the trial court's grant of summary judgment to defendant is *de novo*. *See BellSouth Telecomms., Inc. v. City of Laurinburg*, 168 N.C. App. 75, 80, 606 S.E.2d 721, 724 (2005) (review of trial court summary judgment order based solely upon issues of law is *de novo*).

Plaintiffs argue that the trial court erred in granting defendant's motion for summary judgment and in denying plaintiffs' motion for summary judgment on the ground that no statutory authority enabled defendant to adopt the APFO. We agree.

Plaintiffs contend that the North Carolina General Assembly neither expressly nor impliedly authorized defendant to adopt the APFO via statute. In response, defendant contends that three sources of statutory authority exist for adopting ordinances such as the APFO: (1) statutes relating to the county police power, (2) zoning statutes, and (3) subdivision statutes.

At its core, this case turns on what actions the General Assembly has authorized defendant to take in regulating zoning and managing subdivision development. We recognize the existence of serious issues associated with overcrowding in the school system and with the provision of adequate educational facilities to address these issues and further recognize that those issues also affect the public welfare. Defendant asks this Court to construe broadly the county's police power in section 153A-121, its zoning power in sections 153A-340 and 153A-341, and its subdivision regulation power in section 153A-330 *et seq.* of the North Carolina General Statutes as

authorizing the adoption of the APFO and VMP. However, we do not believe that these statutes provide authority for the implementation of the APFO.

Defendant first contends that defendant's general police power provides authority to adopt the APFO. Pursuant to its police powers, "[a] county may by ordinance define, regulate, [or] prohibit . . . acts . . . or conditions detrimental to the health, safety, or welfare of its citizens[.]" N.C. Gen. Stat. § 153A-121(a) (2005). The police power allows restricting uses of property when the legislative body reasonably believes that in so doing it will promote the most appropriate use of the restricted property and will conserve the values of other properties. *Blades v. City of Raleigh*, 280 N.C. 531, 546, 187 S.E.2d 35, 43 (1972) (citations omitted). However, the General Assembly has enacted the zoning and subdivision regulation statutes for the purposes of delineating the authority of county governments to regulate the development of real estate. For that reason, we believe that defendant correctly has tied the APFO to its zoning and subdivision regulation authority and that North Carolina General Statutes, section 153A-121 does not provide an independent source of authority for the APFO. Any contrary decision would eviscerate existing limitations on defendant's zoning and subdivision regulation authority. Thus, we must look to the zoning and subdivision regulation ordinances to ascertain if the General Assembly has authorized defendant to implement the APFO.

We believe that Professor David W. Owens of the School of Government at the University of North Carolina has explained the distinction between zoning and subdivision ordinances clearly. "The basic principle of zoning is simple: zoning creates a number of different districts, or 'zones,' in a city or county, each of which sets specific rules on *how the land in that district can be used*." David W. Owens, Introduction to Zoning 3 (3d ed. 2007) (emphasis added). In contrast, a subdivision ordinance seeks to "regulate the creation of new lots or separate parcels of land." *Id.* at 129.

Defendant contends that legislatively granted zoning powers provide authority to adopt the APFO. " 'Statutory interpretation properly begins with an examination of the plain words of the statute.' " *Three Guys Real Estate v. Harnett County*, 345 N.C. 468, 472, 480 S.E.2d 681, 683 (1997) (quoting *Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992)). Section 153A-340(a) of the North Carolina General Statutes provides:

For the purpose of promoting health, safety, morals, or the general welfare, a county may adopt zoning and development regulation ordinances. . . . A zoning ordinance may regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes.

N.C. Gen. Stat. § 153A-340(a) (2005). Further, pursuant to section 153A-341,

[zoning] regulations may address, among other things, the following public purposes: . . . to prevent the overcrowding of land; to avoid undue concentration of population; to lessen congestion in the streets; . . . and to facilitate the efficient and adequate provision of . . . schools . . . and other public requirements. The regulations shall be made . . . with a view to . . . encouraging the most appropriate use of land throughout the county. . . . In addition, the regulations shall be made with reasonable consideration to expansion and development of any cities within the county, so as to provide for their orderly growth and development.

N.C. Gen. Stat. § 153A-341 (2005). Where, as here, "multiple statutes address a single subject, this Court construes them *in pari materia* to determine and effectuate the legislative intent." *Brown v. Flowe*, 349 N.C. 520, 523-24, 507 S.E.2d 894, 896 (1998) (citing *Bd. of Adjmt. of the Town of Swansboro v. Town of Swansboro*, 334 N.C. 421, 427, 432 S.E.2d 310, 313 (1993)).

Section 153A-340 provides the legislative grant of zoning power to defendant, enumerating specific elements defendant is allowed to regulate and restrict. Section 153A-341 lists legislative objectives for defendant's use of the zoning power. Included within the list is facilitation of the efficient and adequate provision of schools. However, when construed *in pari materia,* defendant's implementation of those legislative objectives are subject to "the limitations of the enabling act." *Nash-Rocky Mount Bd. of Educ. v. Rocky Mount Bd. of Adjust.*, 169 N.C. App. 587, 589, 610 S.E.2d 255, 258 (2005) (quoting *Allred v. City of Raleigh*, 277 N.C. 530, 540, 178 S.E.2d 432, 437-38 (1971)). In other words, although defendant is entitled to use its zoning authority to facilitate the efficient and adequate provision of schools, it must achieve this goal using the tools authorized by the

zoning statute. While defendant clearly seeks to pursue the legislative objective of facilitating the efficient and adequate provision of schools, the APFO does not utilize any of the zoning powers enumerated in section 153A-340. Therefore, the ordinance falls outside of defendant's legislatively granted zoning powers.

Defendant also contends that legislatively granted subdivision powers provide authority to adopt the APFO. The "power to regulate subdivisions is authorized and controlled by [North Carolina General Statutes, sections] 153A-330 through -335." *Three Guys Real Estate,* 345 N.C. at 472, 480 S.E.2d at 683. One statute that defendant suggests allows for the adoption of the APFO provides, "A county may by ordinance regulate the subdivision of land within its territorial jurisdiction." N.C. Gen. Stat. § 153A-330 (2005). Additionally, the subdivision ordinances generally "provide for the orderly growth and development of the county . . . in a manner that will avoid congestion and overcrowding and will create conditions that substantially promote public health, safety, and the general welfare." N.C. Gen. Stat. § 153A-331(a) (2005). Nevertheless, " '[c]ounties . . . have no inherent legislative powers. They are instrumentalities of state government and possess only those powers the General Assembly has conferred upon them.' " *Five C's, Inc. v. County of Pasquotank,* 195 N.C. App. 410, 413, 672 S.E.2d 737, 740 (2009) (quoting *Craig v. County of Chatham,* 356 N.C. 40, 44, 565 S.E.2d 172, 175 (2002)).

Section 153A-331(c) of the North Carolina General Statutes specifically provides "for the more orderly development of subdivisions by requiring the construction of community service facilities in accordance with county plans" and "for the reservation of school sites in accordance with comprehensive land use plans approved by the board of commissioners or the planning board." However, nowhere within sections 153A-330 through 153A-335 does the General Assembly authorize defendant to adopt a land use regulation ordinance pursuant to which a developer may be forced to make a payment of money, donate land, or provide for school construction. As we previously have stated, "[f]oremost, the duty of providing adequate school facilities is a duty of the County itself[.]" *Durham Land Owners Ass'n v. County of Durham,* 177 N.C. App. 629, 634, 630 S.E.2d 200, 204 (2006). In *Durham Land Owners,* this Court held that Durham County could not shift the financial responsibility for funding school construction to new developments by using a school impact fee. *Id.* at 636-37, 630 S.E.2d at 205. Here, authors of the APFO and VMP clearly worked in good faith, using their best efforts to draft

an ordinance that would operate within defendant's statutorily-granted authority. However, as with the use of school impact fees in *Durham Land Owners*, defendant uses the APFO, which uses a VMP and other similar measures, to shift impermissibly a portion of the burden for funding school construction onto developers seeking approval for new developments.

Defendant may not use the APFO to obtain indirectly the payment of what amounts to an impact fee given that defendant lacks the authority to impose school impact fees directly. Therefore, because our Constitution places the duty to fund public schools on the General Assembly and local governments and because the General Assembly has neither expressly nor impliedly authorized defendant to shift that duty using subdivision ordinances that impose fees or use similar devices upon developers of new construction, we hold that defendant's adoption of an APFO that includes a VMP and similar measures was in excess of its statutory authority. We reverse and remand to the trial court for entry of an order consistent with this opinion.

As our holding as to plaintiffs' first argument is dispositive, we need not address the remaining arguments regarding whether the APFO represents a *de facto* moratorium, violates equal protection clauses, acts as an unlawful tax, or acts as an unlawful taking.

Reversed and remanded.

Judges McGEE and ERVIN concur.